STATE OF IOWA, Appellee, v. JOHN ALDERMAN, Appellant.

INTOXICATING LIQUORS: Bootlegging—Essential Elements. To
1   establish a charge of bootlegging, under Sec. 2461-a, Code
    Suppl. Supp., 1915, actual sale need not be proved, if intent
    to sell is shown in some other way. It must, however, be
    shown that defendant carried intoxicating liquor about on his
    person, with intent to sell or dispose of it illegally.

INTOXICATING LIQUORS: Bootlegging—Essential Elements. In
2   a prosecution for the violation of Sec. 2461-a, Code Suppl. Supp.,
    1915, *held* that proof of the venue, and of the further fact that
    defendant carried intoxicating liquor around on his person,
    with intent to sell and dispose of it contrary to law, was suffi-
    cient to sustain the conviction.

WITNESSES: Credibility—Violation of Bootlegging Statute—Jury
3   Question. In a prosecution for violation of the bootlegging stat-
    ute, the credibility of the witnesses was for the jury, and the

Supreme Court should not interfere with the finding against the defendant, even though, sitting as a jury, it might not have convicted.

SALINGER, J., dissents.

*Appeal from Story District Court.*—R. M. WRIGHT, Judge.

OCTOBER 2, 1919.

THE defendant was convicted under an indictment charging him with willfully and unlawfully keeping whisky, and carrying it about on his person, with intent to sell the same, contrary to law. He appeals.—*Affirmed.*

*H. R. Vasey, B. B. Welty,* and *E. H. Addison,* for appellant.

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, and *Harry Longland,* County Attorney, for appellee.

PRESTON, J.—1. The indictment charges that, on or about the 6th of September, 1918, defendant did willfully, feloniously, and unlawfully keep and carry about on his person certain intoxicating liquors, to wit,

1. INTOXICATING LIQUORS: bootlegging: essential elements.

whisky, with the intent then and there to sell the same, contrary to the statute, etc. This follows the language of the statute. One Carver testifies that, on September 6, 1918, he bought a bottle of whisky from defendant, and paid him for it. He testifies that defendant approached him, and said, "I know where you can get some whisky. Do you want it?" Negotiations were then had as to the price, and Carver said he would go and see if he could get the money. He went away, and did get it, and returned in 15 minutes with it. Defendant, too, left. He returned, shortly, with a quart of whisky, and Carver then said he would take a quart. Defendant said he would have the

money first; whereupon, Carver gave him the money. Thereupon, defendant handed Carver a quart of whisky, and Carver stuck it in his pocket. When Carver first noticed the whisky, defendant had it in his hands, and handed it to Carver.

This is sufficient to constitute an unlawful sale of whisky; but it is argued that not all illegal sales of liquor constitute bootlegging. *Barr v. Neel*, 151 Iowa 458, at 460, is cited. That was an action in equity, by which it was sought to enjoin defendant from maintaining a nuisance in a building. It was held that the evidence was not sufficient to sustain the claim of nuisance, and the plaintiff claimed that defendant should have been held under the bootlegging statute; but there was no evidence that he had done any of the things required to constitute bootlegging. So that it may be conceded that the mere fact of making an unlawful sale of liquor does not, of necessity, in every case, establish bootlegging, under the statute. Under such statute, it must be shown that defendant kept, or carried around on his person, etc., intoxicating liquor, with intent to sell or dispose of the same, by gift, or otherwise, in violation of law. Section 2461-a, Code Supplemental Supplement, 1915. An unlawful sale is not, of course, essential, to make out bootlegging, but the actual selling may prove the intent to sell or dispose, which is essential to bootlegging, and the intent may be shown by some other circumstance than sale. In the instant case, there was a sale. The question is whether defendant had carried the liquor around on his person. It is true that, at the time the negotiations were begun, defendant did not have the liquor on his person, but he did go to the place where he either had it stored, or to his cache, or to some other place, or obtained it in some other manner, and then transported it, or carried it in his hand for some distance, to the purchaser. This was a part of the delivery, and a part of the

sale. His hand was a part of his person. It is very clear to a majority of the court that defendant was guilty of carrying around on his person intoxicating liquor, with intent to sell the same. To hold otherwise would be exceedingly technical and finespun. The bootlegging statute does not require the State to show just what distance, or for how long the liquor has been carried. We are not disposed to amend the statute, and fix a rule whether it shall be 50 feet in 5 minutes, or 100 feet in 10 minutes.

2. It was sufficient to prove the venue, and the further fact that defendant carried intoxicating liquor around on his person, with intent to sell or dispose of the same, contrary to law. The jury was so instructed, and there are many complaints of the 16 instructions. The complaints are that they were erroneous and misleading, because the jury was therein told, in effect, that the State was required to prove only the unlawful sale. The only exception taken to the charge is that Paragraphs 1 to 16, "and each and every one of said paragraphs, are erroneous, for the reason that the same, and each of same, are contrary to law, misleading, and prejudicial to the defendant." The State insists that this is too indefinite to entitle appellant to review of the charge. We think the position is well taken.

<strong>2. Intoxicating Liquors: bootlegging: essential elements.</strong>

3. It is thought that the conviction ought not to be sustained, because the witness Carver and his testimony are not credible. Carver testifies to the sale, and this is denied by the defendant. An attempt was made to break down Carver's testimony, and it must be admitted that there are some contradictions and inconsistencies therein; nevertheless, we are of opinion that the credibility of the witness and his testimony was for the jury, and that, the finding being against the defendant, we

<strong>3. Witnesses: credibility: violation of bootlegging statute: jury question.</strong>

ought not to interfere; and this is so even though, if we were sitting as a jury, we might not convict.

In *State v. Carpenter*, 124 Iowa 511, the defendant was convicted of the crime of rape, and sent to the penitentiary. The story told by the prosecuting witness before the committing magistrate tended strongly to show that there was no rape, and that an acquittal would have been justified. It was also claimed that her story was improbable. But her testimony at the trial on the indictment tended to show rape. Her testimony before the committing magistrate was introduced in evidence for the purpose of impeachment. It was held that the credibility of the witness and her testimony was for the jury.

Without further discussion, we reach the conclusion that the judgment in this case ought to be affirmed. It is —*Affirmed*.

LADD, C. J., WEAVER, EVANS, GAYNOR, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). The majority concedes that the mere fact of making an unlawful sale of liquor does not, of necessity, establish bootlegging, under the statute. *Barr v. Neel*, 151 Iowa 458, at 460, so holds. Statute bootlegging requires, for one thing, the carrying of the liquor about the person. That requirement must have reasonable construction. It being conceded that there may be an unlawful sale of liquor without constituting bootlegging, there must be cases where bootlegging is not established though, literally, the liquor was carried about the person of the vendor. The barkeeper who reaches back to his bar and takes a bottle of whisky in his hand and delivers it to a buyer is, in a literal sense, at one time carrying liquor on or about his person. It appears in the majority opinion that, when the negotiations claimed to have been made by the defendant were on, he did not have the liquor upon him, because he went away to get it. It is true that, before he delivered it,

he must have in some way transported it about his person. It is true that handing over the liquor was a part of the delivery and of the sale; true, that defendant's hands are a part of his person. But the same reasoning would have made out a case of bootlegging in *Barr v. Neel.* The same evidence would make out a case of bootlegging whenever liquor was sold. In every such sale, there must be a time in which the vendor is "transporting" the liquor for some distance, and a time in which he has it in his hands. In my opinion, the evidence here, if believed, does not make out the crime charged, no matter how much it may prove an illegal sale of liquor.

II. But I press this part no further, because I am satisfied that the verdict should be set aside for being against the weight of the evidence.

Defendant admits he may have been in Collins on the day on which Carver asserts he sold him whisky, but denies that he gave or sold Carver liquor of any kind. He testifies that he carried no intoxicating liquors, either on his person or in an automobile, or in any other way. True, his interest affects his denial. But the weight of Carver's testimony is also not free from all impairment. He testifies he gave one Cure part of the whisky. Cure was a witness, was not interrogated on that subject, and gave no testimony in corroboration of this assertion. And Carver testifies on his own standing when he says that, on the day following the one on which he claims the liquor was sold to him at Collins, he went to Rhodes, and then back to Maxwell; that he had with him a couple of minor boys; and that "these boys got a little of the whisky." But assume that, at this point, there is such fair conflict as prevents interference with the finding of the jury that the testimony of Carver was shown beyond reasonable doubt to be true. But this is not all. Carver testifies he told Kerns, Shuey, and Cure that he obtained this liquor at Enter-

prise; that he does not remember whether he told the officers or Cure that the liquor was got at State Center. He admits he told Cure that the liquor was bought at Collins, of a young man who wore a gray suit. He explained why he thus told what he now says was false by saying, "Well, I didn't like to tell on anybody." He was then reminded that he had told on the fellow with a gray suit on, and asked whether he had not done that. He made the evasive and irrelevant answer, "I didn't know there was anybody there." It was only after pressure by the court that he said that, notwithstanding all this, he was now telling the truth, in stating that the purchase was made from defendant. There is this additional self-impeachment of the credibility of the testimony of the prosecuting witness:

"Q. Isn't this true: that you told them these things, and finally they suggested to you that you had to name someone who had sold this to you, and, as you didn't know the other fellow's name, you better put it onto John Alderman? Isn't that true? A. Did I tell them that? Q. Yes. A. No. Q. Didn't they tell you that? A. They told me— Q. Go on, now, and tell the jury. A. They told me where I got it, and what kind it was. Q. They told you? A. Yes, sir. Q. Did they tell you how you got it? A. No. Q. They told you, now, Harry,—they [the officers] told you that they had to charge someone that you knew his name, and you didn't know the Enterprise fellow's name, nor the State Center fellow's name, nor the fellow in Collins with the gray suit,—you didn't know his name; so you charged it up to John Alderman, so they could have him indicted. Isn't that true, now? A. Yes, sir."

The only thing for which it could even be claimed that there is any qualification or retraction of this is testimony on a talk of Carver's with the county attorney. And that testimony has no such effect. In the first place, whatever was said by or to the *county attorney* is not a talk with

"they," the officers. And the testimony as to what the talk with the county attorney was 'does not negative the claims of Carver as to what "they" said to him, and as to what induced him to name defendant. All there is as to the talk with the county attorney comes to this: Carver says that the county attorney is the man to whom he stated for the first time that defendant had sold him the liquor. Being then asked whether anything else was said, he answered, "I don't know all we did say." Surely, this is no evidence that "they" did not say what the witness swears they did say. As for the rest, King testifies that, at a time when Carver was at a justice's office, and or about to be arraigned for something, the county attorney asked Carver where he got this whisky.

"And he told him he had told Cure and me where he had got it: he got it at Enterprise. Mr. Langland said, 'Well, now, we know that this whisky that you got drunk on Saturday night, that you didn't get it at Enterprise,' and told him he might just as well tell the truth about it— rather, I think, if I remember right, he told him that he ought to say positive as to where he did get it. Now that is about as near as I remember the run of the conversation there. Thereupon, Carver said: 'Well, come out here, and I will tell you;' and they stepped off to one side, probably 10 feet from us, and the balance of the conversation I didn't hear much of. Q. You didn't hear what was said off there? A. Well, all I heard was, I heard him speak John Alderman's name,—that is about all I heard distinctly."

All this has not as much as a tendency to show that "they" did not say to Carver what he swears they did, and that being told this was not what induced him to charge defendant.

The State was at liberty to show, by testimony other than Carver's, that defendant had sold him liquor—some-

thing it did not attempt. But, while it could so proceed notwithstanding the said impeachment of Carver, it should not have a conviction unsupported by anything but Carver: It should not be doubted that the State may not make Carver its witness, and then say that, while he perjured himself in testifying to what induced him "to charge up" to defendant, he was truthful when he testified that defendant was the person who sold to him. It cannot show that his own oath has impeached him, and insist that he should be believed without corroboration. As defendant is unimpeached, and the vital witness for the State is utterly self-impeached, the case falls within the rule under which we interfere with the verdict more readily than we do on the civil side, and set aside a conviction which is clearly against the weight of the evidence. See *State v. Saling,* 177 Iowa 552, and cases therein followed.

I agree, of course, that, ordinarily, the credibility of witnesses and contradictoriness and inconsistencies are for the jury, but submit that here there is more. Here is not a conflict, but a case where public policy demands that the conviction should be set aside. The verdict is based upon nothing but testimony which is not only contradictory and inconsistent, but is that of a completely self-impeached witness. If this conviction is sustained, it must be sustained although the sole State witness on the vitals confesses that he is unworthy of belief, and testifies without dispute that he accused the defendant because of undue pressure. The verdict can be sustained only by holding that, on appeal, the existence of a verdict conclusively establishes that the verdict has sufficient support. That is not so even on the civil side. *Williams v. Budgett,* 186 Iowa 196.

Sustaining such a verdict as this is a menace to the honest public. It may be thought by some that it matters little what evidence is or lacks of being, if it is possible that defendant is guilty. But surrendering all to the mercy of

perjurers and to the mere caprice of juries is a high price to pay for the privilege of convicting a person in fact guilty, without lawful evidence. I am urging that we adhere to the rule which English-speaking peoples have builded upon sound experience: that all shall be deemed innocent until proved guilty by credible and sufficient evidence. Every departure from that rule simply amounts to judicial lynch law.

I would reverse.