STATE OF IOWA, Appellee, v. A. C. BAMSEY, Appellant.

No. 39683.

JUNE 24, 1929.

*Frank Wisdom* and *Donald F. Wisdom,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

KINDIG, J.—On the 21st day of October, 1927, the grand jury of Union County purported to indict the defendant-appellant, A. C. Bamsey, for the offense of bootlegging, committed on July 2, 1927. In the indictment the grand jury charged that the said Bamsey ''did willfully and  unlawfully carry about in a vehicle certain intoxicating liquors, with intent to sell, then and there, and did sell to one Francis Phelan one

gallon of said intoxicating liquor, then and there, for the sum of $18." Thereafter, on September 11, 1928, just prior to the commencement of the trial on that day, the county attorney orally, in open court, in the presence of the appellant and his counsel, asked for permission to amend the indictment. Over the appellant's objection, the court allowed the amendment, to the extent that there was entirely eliminated all reference to the Francis Phelan sale. Appellant attacked this amended indictment by demurrer and motion to quash. Then he waived arraignment thereunder, pleaded not guilty to the offense therein charged, and expressed his willingness to proceed with trial thereon. Conviction resulted; and to obtain relief therefrom, various errors are now here assigned, concerning the court's ruling on the sufficiency of the indictment, the allowance of the amendment thereto, the admissibility of certain evidence, and erroneous instructions. Convenience dictates that these propositions shall be considered in the order following.

I. At the outset, appellant objects to the method adopted by the State for amending the indictment. He contends that the same was not done in accordance with the requirements of the 1927 Code relating thereto. Those statutory provisions are embodied in four sections, as follows:

"13744. The court may, on motion of the State, and before or during the trial, order the indictment so amended as to correct errors or omissions in matters of form or substance."

"13745. If the application for an amendment be made before the commencement of the trial, the application and a copy of the proposed amendment shall be served upon the defendant, or upon his attorney of record, and an opportunity given the defendant to resist the same."

"13746. If the application be made during the trial, the application and the amendment may be dictated into the record in the presence of the defendant or of his counsel, and such record shall constitute sufficient notice to the defendant."

"13747. Such amendment shall not be ordered when it will have the effect of charging the accused with an offense which is different than the offense which was intended to be charged in the indictment as returned by the grand jury."

While the amendment, as before stated, was dictated into

the record by the county attorney in open court, in the presence of the defendant-appellant and his counsel, yet the same was  done before the trial began. Although the defendant and his counsel were in the courthouse preparatory to proceeding with the trial, nevertheless the trial contemplated by Sections 13745 and 13746, supra, had not begun. It appears that the appellant had not been arraigned, nor had he pleaded to the indictment. There could be no trial at least until after the arraignment and plea. As to when thereafter the trial begins, we do not now decide. Section 13804 of the 1927 Code contains this language:

"An issue of fact arises on a plea of not guilty or of former conviction or acquittal, and no further pleading is necessary. Issues of fact must be tried by a jury."

A trial, as contemplated by Sections 13745 and 13746, supra, had not started, even though the same was about to commence. Lines of demarcation are necessary for the determination of issues, and no matter how near such line is approached, if it is not reached and crossed, the legal principles applicable to the facts within the field of investigation on one side thereof cannot be applied to those on the other. Hence, in the case at bar, Section 13745, supra, controlled the method of amending the indictment, because the trial was not yet in progress.

II. That section requires that the application for an amendment and a copy of the proposed "amendment shall be served upon the defendant, or upon his attorney of record, and an opportunity given the defendant to resist the same."

This is what the appellant demanded in the present case, but his protest was overruled. Nevertheless, the State argues that the defendant-appellant waived any right to that particular statutory method of amendment because he was present in court with his counsel, heard the amendment dictated into the record, made objections thereto, demurred to it, was arraigned thereunder, and pleaded not guilty, moved to quash it, and expressed his willingness to proceed to trial thereon. By way of answer to the State's theory in this regard, the appellant says that he immediately demanded compliance with the statute aforesaid, asked for a copy of the amendment, and maintained and renewed his exceptions to the procedure at every stage of the trial consistently

throughout to this court. Such is the issue at this juncture. Can the county attorney ignore Section 13745 and amend the indictment by dictation into the record under Section 13746, supra, even though the trial has not begun? We think not.

Under Section 13744, supra, the district court, on motion of the State before or during the trial, may order an amendment. Sections 13745 and 13746, supra, express the way in which such motion may be made. The motion in those sections is referred to as an application, and if before the trial, it must be in writing, but during the trial, it may be dictated into the record. Motion, as provided in Section 13744, supra, cannot be made in any way except as permitted in Sections 13745 and 13746, supra. An oral application, when a written one is required, would amount to no motion at all, and consequently no amendment could be ordered thereon. Were it otherwise, the statutory mandates could be entirely ignored, on the theory of waiver; because, if the defendant did not object, it would be argued that he had relinquished his right so to do, and on the other hand, if he did make protest, again the State would contend, as it here does, that by so doing a waiver resulted. No indictment can exist except in the method and way allowed by the statute. Likewise, the amendment contemplated by Section 13744 is also statutory, and it cannot become a part of the indictment except through the method authorized by the legislature. Before the trial begins, the statute requires that the application shall be served on the defendant or upon his attorney of record; while, during the trial, the application may be dictated into the record. Authority to the contrary is not cited. *State v. Japone,* 202 Iowa 450, discusses a problem where, during the trial, a written application was served, but no formal amendment was filed. Suggestions there were made that the defendant waived the irregularity because he made no objections thereto until exceptions to the instructions were taken. However, that does not determine the present controversy, because the express terms of the statute were not violated, while here they are.

Through every available method, the appellant advised the State of the irregularity and illegality. Waiver, under those circumstances, cannot arise, and prejudice must result because the appellant was required to go to trial on the indictment wrongfully amended, which, because thereof, amounted to a different in-

dictment from that returned by the grand jury. Error therefore appears.

III. When making his motion for the amendment, the county attorney requested permission to strike or remove certain portions of the indictment, and to substitute therefor specific words. After so doing, the county attorney continued his application in the following language: "So that said indictment, as amended, will read as follows: * * * the said A. C. Bamsey * * * in the county aforesaid, did willfully and unlawfully carry about in a vehicle certain intoxicating liquors with intent to sell said intoxicating liquors contrary to the statute," etc.

Following the foregoing was the official signature.

Grievance here is predicated by appellant upon the ground that the indicated action of the county attorney resulted in not an amended indictment, but a substituted one. So the appellant suggests that the substitution was not the product of the grand jury, but rather of the county attorney. Undoubtedly it is true that the county attorney cannot substitute indictments, because the statute permits certain amendments only. *State v. Kiefer*, 183 Iowa 319. Substitution, nevertheless, as distinguished from amendment, did not result from the county attorney's action in the case at bar, because the form outlined by him, following the elimination and substitution, was not the amendment, but a word picture of the amended indictment, offered for convenience. The amendment consisted of the eliminations and substitutions aforesaid; while the form dictated thereafter was no part of the change in the indictment, but rather, an indication of how the amendment affected that instrument.

On the contrary, the amendment proposed in *State v. Kiefer*, supra, purported to be a substitution of the amendment for the original indictment. Accordingly, in the *Kiefer* case we condemned the substitution, and held that the original indictment must at all times stand changed only by permissible amendments. Therefore, when thus amended, the original indictment as returned by the grand jury still exists, without change in the offense originally intended to be charged in the indictment; but, as permitted by Section 13744, supra, in such event there have been corrected "errors or omissions in matters of form or substance."

Assuming that the application had been made as required by Section 13745, supra, there was no error here.

IV. Included within the words of the indictment excluded by the amendment were: "then and there." Resultantly, the grand jury, under the amended instrument, does not charge  where the appellant intended to sell the intoxicating liquors which he "willfully and unlawfully carried about in a vehicle." Remaining within the indictment after the change, however, are the words "with the intent to sell." To elucidate, the amended indictment charged that the appellant "did willfully and unlawfully carry about in a vehicle certain intoxicating liquor with intent to sell said intoxicating liquor." Yet the indictment does not say where appellant intended to make the sale. Upon this omission an assignment of error is made, because it is urged by the appellant that, in order for the venue to be. in Union County, the State must plead and prove that the sale was intended therein.

Manifestly this is not the law. "Bootlegging" is defined by Section 1927 of the 1927 Code in this way:

"Any person who shall * * * keep or carry around * * * in a vehicle * * * any intoxicating liquor as herein defined, with intent to sell * * * the same * * * shall be fined not less than three hundred dollars nor more than one thousand dollars and be imprisoned in the county jail not less than three months nor more than one year."

Sale is not necessary; for the gist of the offense under the present indictment is the keeping or carrying around of the intoxicating liquor in a vehicle with intent to sell. *State v. Vanderpool*, 195 Iowa 43; *State v. Alderman*, 187 Iowa 244. Prohibition of and punishment for the illegal sale are provided under other statutes. Evidently the purpose of Section 1927, supra, was to curb, and, if possible, prevent, the unlawful trafficking in such liquors. If appellant were carrying the intoxicating liquor about in a vehicle with the intent to sell, he would be more likely to violate the prohibitory law of this state than if he were not so doing. Said consideration, as well as others, no doubt led the legislative branch of our government to the enactment of the bootlegging statutes above named.

Clearly, then, there is no reason why the lawmaking body could not declare illegal such possession with intent to sell, regardless of where the offender expected to make the sale. Were it otherwise, the bootlegging provision would become almost, if not quite, impossible of enforcement unless a sale was in fact made; for until such transaction, it would be very difficult to prove where a particular transgressor intended to unlawfully dispose of his intoxicating liquors. Similar statutes have been enacted to prevent certain persons from having the possession of burglary tools with intent to commit burglary. Under such legislative provisions, many courts have held that the venue lies, not where it is intended to commit the burglary, but where the possession and the intent occurred. *People v. Reilly,* 49 App. Div. 218 (63 N. Y. Supp. 18), affirmed in *People v. Reilly,* 164 N. Y. 600 (59 N. E. 1128) ; *People v. Edwards,* 93 Mich. 636 (53 N. W. 778) ; *People v. Jones,* 124 Mich. 177 (82 N. W. 806). Explanatory language in *People v. Edwards,* supra, indicates:

"If it is necessary, before a conviction can be had under this statute, to establish the location and ownership of the particular building intended to be broken into, it would be necessary in most cases to wait until the person having such tools in his possession with the intent to use them feloniously is caught in the very act of burglary, which is another and entirely distinct offense. Such a construction would render this statute practically nugatory, and would entirely defeat its purpose and object. * * * It [the statute] is aimed at that class of criminals who provide themselves with implements to make the commission of the crime of burglary easy, and who go about the country from place to place, with the intent to use them whenever they find an opportunity to do so. The possession of such implements, and a *general* intent to use them in the felonious manner mentioned in the statute, is all that is necessary * * *. It was not necessary to allege or prove any intent to use them in a particular place, or for a specified purpose, or in any definite manner."

Again, in *People v. Jones,* supra, it is said that the State need not plead or prove the defendant's intent to use such tools in any special county, due to the fact that the gist of the offense is the possession with the intention. Also, in the bootlegging statute before us, the criterion is not where appellant intended to

make the sale, but in what county did he carry about the intoxicating liquors in his vehicle with intent to sell them?

We will not disturb the district court's ruling in this regard.

V. Apparently with the idea of proving the intent above discussed, the State introduced evidence to show that intoxicating liquor had been sold by the appellant. Exception was taken  to such evidence, on the theory that it was an attempt to inform the jury of other separate and distinct offenses. Previously, however, this court has ruled against appellant's proposition. *State v. Vanderpool,* supra. Not only one sale, but many, may be shown, in order to prove the intent. Appropriately, it was said in the *Vanderpool* case:

"It was incumbent upon the State to prove, not only the keeping of the liquor by the defendant on his person, but also the *intent to sell.* For the purpose of proving such intent to sell, it was competent and material for the State to prove actual sales, and it was permissible for it to prove as large a number of sales as it could, within the period of limitation. There was no limit upon it in that regard."

VI. Among the instructions given by the court to the jury is IX, which, in part, states:

"If you [the jury] find beyond a reasonable doubt that the defendant had possession of intoxicating liquor at the time and place alleged in the indictment, such possession is prima-facie evidence of bootlegging, as defined herein."

Obviously that is erroneous, for no such presumption exists. At all times throughout the trial the burden was upon the State to show each and every element necessary to constitute bootlegging.  Aid in that regard is not furnished by prima-facie evidence resulting from possession. Parenthetically, it is noted that the indictment here is not for the illegal possession in and of itself, but rather, the specific charge is "bootlegging." Thus, the State accuses the appellant of a particular offense under the prohibitory law. Statutory presumptions in existence at the time do not apply. Section 1966-a1 of the 1927 Code contains this phraseology:

"In all actions, prosecutions and proceedings, criminal or civil, under the provisions of this title, the finding of intoxicating liquors * * * in the possession of or under the control of any person, under and by authority of a search warrant or other process of law, and which shall have been finally adjudicated and declared forfeited by the court, shall be prima-facie evidence, in any action, criminal or civil, of maintaining a nuisance or bootlegging, or of illegal transportation of intoxicating liquors, as the case may be, by such person."

In the first place, that enactment was not in force at the time the offense charged was committed. Moreover, there is no evidence that the intoxicating liquors named have been condemned or declared forfeited in the manner and way contemplated by Section 1966-a1, supra. Necessarily, then, the prima-facie evidence therein provided could not and did not arise in this controversy. Whether or not the instruction would have been good in a charge for illegal possession, we do not now determine.

For the error found, the judgment of the district court is reversed.—*Reversed.*

All the justices concur.