ELLA BLOOR ET AL. V. STATE OF NEBRASKA.

FILED JULY 9, 1935. No. 29457.

*David J. Bentall, Dewey Hanson* and *R. P. Starr,* for plaintiffs in error.

*William H. Wright, Attorney General, contra.*

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ.

Rose, J.

In a prosecution in the district court for Sherman county, Ella Bloor, Harry McDonald, Carl Wicklund, Portius Sell, John Squires, Floyd Booth and Loretta Booth, defendants, were tried on a complaint by the county attorney, charging in the name of the state that they—

"On or about the 14 day of June A. D. 1934, in the county of Sherman and state of Nebraska, then and there being, did then and there unlawfully and riotously assemble and gather, together with fifty or more other evil disposed persons whose names are unknown to complainant, with the intent then and there to do certain unlawful acts with force and violence, to wit, to disturb the public peace, to abuse and resist the sheriff of Sherman county, Nebraska, in the execution of his office and to make an assault upon Merle Reed, Leslie Tilton, Harry Oltman, Roy Elrod, Mervin Smith, Howard Rowe and other persons whose names are unknown to the complainant, and that being then and there so unlawfully assembled and gathered together with the purpose and intent aforesaid and having armed themselves with clubs, sticks, black-jacks and other offensive weapons said defendants did then and there unlawfully

and riotously abuse and resist the sheriff of Sherman county, Nebraska, in the execution of his office and did then and there unlawfully and riotously and with force and violence strike, beat and wound Merle Reed, Leslie Tilton, Harry Oltman, Roy Elrod, Mervin Smith, Howard Rowe and numerous other persons whose names are unknown to the complainant and did then and there unlawfully and riotously in the manner and by the means hereinbefore described disturb the public peace of the people of Sherman county, Nebraska, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Nebraska."

The statute making unlawful assembly a punishable offense is as follows:

"If three or more persons shall assemble together with intent to do any unlawful act, with force and violence, against the person or property of another, or to do any unlawful act against the peace; or, being lawfully assembled, shall agree with each other to do any unlawful act as aforesaid, and shall make any movement or preparation therefor, the persons so offending shall be fined in any sum not exceeding one hundred dollars, and be imprisoned in the jail of the county not exceeding three months." Comp. St. 1929, sec. 28-804.

Upon a trial the jury found each of the defendants named guilty as charged in the complaint and each was sentenced by the district court to pay a fine of $100 and to be imprisoned in the county jail for 30 days, less the number of days already detained therein. By petition in error defendants present for review the record of their conviction.

It is contended by defendants that the complaint, the rulings of the trial court and the instructions confused the offense of unlawful assembly and the offense of riot to the prejudice of defendants. There are specific assignments that the trial court erred in overruling a motion to quash the complaint on the grounds that it purports to charge more than one offense; that it fails to state facts sufficient

to constitute a cause for a criminal complaint; that it is not sufficiently specific to charge an offense.

Riot and unlawful assembly are kindred offenses in contemplation of criminal law and may be charged in the same complaint. 54 C. J. 829. Unlawful assembly is defined by the statute quoted. An examination of the complaint shows that it contains all the elements essential to the statutory offense of unlawful assembly—an assembly of three or more persons with intent to commit unlawful acts. If the complaint is interpreted as going further and as charging a riot, elimination of the surplusage in that particular would still leave a valid complaint for unlawful assembly, the unlawful acts which defendants were accused of intending to commit being stated. In this condition of the record, error does not affirmatively appear in the overruling of the motion to quash the complaint.

The principal assignments are that the evidence is insufficient to support a verdict against defendants and that the trial court erred in overruling a motion to direct a verdict in their favor at the close of the testimony. There are over 700 pages of evidence and consequently it cannot be discussed in detail. An examination of the record, however, shows that the evidence is sufficient to sustain a verdict that all defendants convicted were guilty of unlawful assembly. There is evidence of the following facts: June 13, 1934, defendant Wicklund went to the Fairmont Creamery in Loup City, Sherman county, and caused a disturbance. The manager of the creamery called the sheriff who directed the removal of the disturber. Wicklund threatened violence and later said to the sheriff, "We'll have 5,000 men in here and we'll block every road into Loup City." By wire he sent calls to South Dakota and Iowa for an assembly to "demonstrate" and pledged "solidarity" to chicken pickers on strike. There was no strike. There were calls for help from four different states. Crowds from different places gathered in Loup City, some in a quarrelsome mood. Thirty persons from Arcadia approached the sheriff and one of them became abusive.

June 14, 1934, defendant Squires and his wife went to the fire station and the wife said in presence of her husband that the fire truck should be put out of commission before they started anything. Defendant Squires told a member of the fire department he had better stay away from the fire truck. A crowd of several hundred people gathered at the courthouse. Defendants were present. Harry Smith addressed the crowd and among other things said:

"If they didn't get their demands that they would stop all roads so they couldn't even sell a toothpick in Loup City," and "If they lock any of us up why we'll get them out if we have to get them out by force."

Defendant Wicklund spoke and among other things said, referring to the sheriff:

"If they took him or bothered him in any way he would bust him in the nose."

There was a cry: "To hell with the sheriff," and "If you put him (Squires) in jail, we'll take him out."

There was violent interference with the sheriff and his deputies in their duty to preserve order. The assembly was proved beyond question. The intent to assemble and commit unlawful acts by resisting officers in the performance of public duties and by interfering with personal and property rights of law-abiding citizens was fairly shown by competent evidence. That each of the convicted defendants was a participant in all the elements constituting the offense of unlawful assembly was a proper finding by the jury on the evidence as a whole. The evidence adduced by the state went further than was necessary to a conviction for unlawful assembly and tended to strengthen proof of unlawful intent, but does not lend support to the assignment of error that the evidence is insufficient to sustain the conviction. The trial court by instructions and the jury by verdict protected defendants from a conviction for riot.

Instructions and rulings on evidence are challenged, but in these respects error prejudicial to defendants has not been pointed out or found in a review of the record.

AFFIRMED.