Belknap,
No. 5523.

### State *v.* Lawrence E. Galvin.

Argued October 4, 1966.
Decided November 30, 1966.

*George S. Pappagianis*, Attorney General, *William J. O'Neil*, Assistant Attorney General, and *Richard P. Brouillard*, county attorney ( *Mr. O' Neil* orally ), for the State.

*Nighswander, Lord, Bownes & Martin* ( *Mr. Willard G. Martin, Jr.* orally ), for the defendant.

WHEELER, J. Information brought by the county attorney charging the defendant Lawrence E. Galvin as follows: " . . . that Lawrence Galvin of Albany, New York, on June 19, 1965, at approximately 11:30 P.M. at Laconia, County of Belknap and State of New Hampshire, in a public parking lot off of Maple Street in said Laconia, did, while being present during mob action, to wit, the use of force or violence, disturbing the public peace by two or more persons acting together and without authority of law, failed to withdraw on being commanded to do so by Eugene Blake, a police officer, in violation of Revised Statutes Annotated, Chapter 609-A, Section 4. . . . "

Section 4 of said chapter provides: " 609-A:4 ( supp ) REFUSAL TO WITHDRAW. Any person present during mob action, whether a participant in the mob action or not, who does not withdraw on being commanded to do so by any peace officer shall be fined not more than five hundred dollars, or imprisoned not more than one year, or both. "

During the trial the defendant took various exceptions to the admission and exclusion of evidence, and at the close of the trial submitted requests for findings and rulings. After trial the Court found the defendant guilty. All questions of law raised by these exceptions or any exceptions appearing in the transcript were reserved and transferred by *Keller*, J.

The defendant raises only three issues in his brief and in oral argument for consideration here. ( 1 ) Whether the defendant effectively withdrew from the scene of mob action within the meaning of RSA 609-A:4 ( supp ); ( 2 ) whether or not the defendant had reasonable time to withdraw within the meaning of RSA 609-A:4 ( supp ); and ( 3 ) whether the defendant had reasonable and reasonably safe means of withdrawal over public ways or property.

On June 19, 1965 a riot took place at Weirs Beach, New Hampshire involving what has been estimated to be thousands of people. The riot seemed to be concentrated within the bounds

of Veterans Avenue on the south side, Lakeside Avenue on the east side, Foster Avenue and Lot No. 3 parking area on the north side, and parking Lot No. 2 along with Maple Street on the west side.

In summary the uncontradicted evidence of the State's witnesses leading up to the arrest of defendant Galvin established the following facts: On the night in question at about 10:30 P.M. the Laconia police riot squad, headed by Captain Abbott and assistant leader Lieutenant Blake, were proceeding from the junction of Tower Street southerly on Lakeside Avenue to its junction with Route 3. They were accompanied at times by members of the State Police and of the National Guard.

Thus proceeding the group drove a mob of people throwing rocks, bottles and cans and shouting obscene remarks, down Lakeside Avenue. As they reached the junction of Route 3 they encountered a stationary crowd of some two hundred individuals to their right and another group of two hundred in front and around the Eden Rock Hotel. They again received from both groups a shower of rocks, half full beer cans and bottles together with shouts and insults.

The riot squad then returned back on Lakeside Avenue and received similar treatment from other groups between various buildings until they reached Veterans Avenue where another group refused to disperse and shotgun fire was "put into them to move them." A similar reception greeted the squad on Tower Street where a group of some one hundred dispersed on command of the squad leaders.

After leaving Tower Street the squad of twenty-five men entered Lot No. 1 and cleared out another group rioting there and then proceeded uphill across parking Lot No. 2 to Lot No. 3, which adjoined Lot No. 2. As they approached Lot No. 3 a motor vehicle with a trailer and a motorcycle were seen parked, together with some twenty people in the vicinity of these vehicles. Insults, beer cans and bottles and rocks were being thrown at the squad. As they moved toward the parked vehicles the squad leader and assistant squad leader were shouting continuously in loud voices "Disperse. Clear the area." These commands continued until the squad was about ten feet from the parked vehicles.

As a result of the repeated commands to disperse some twelve to fifteen of the assembled group left the area in a southerly and westerly direction into the woods. One individual ran out of the

parking lot entrance and down Foster Avenue. Six other indi-
viduals, including the defendant, elected to remain in and about
the parked motor vehicle. The commands to disperse commenced
when the squad was seventy-five feet from Lot No. 3 and con-
tinued as they approached at a normal pace. There was
opportunity for the group to disperse directly to the south, to the
west, to the north or to have gone out the exit to the east.

Two of the officers approached the front of the parked vehicle
on opposite sides. One officer identified defendant Galvin standing
on the front seat of his convertible. His attention was attracted
to him because he had a ring in his nose, long hair and side-
burns and was badly in need of a shave. Another person in the
car remarked " We'll be back. " As one of the officers approached
the driver's side of the vehicle Galvin came toward him with his
arms swinging and fists closed. The officer swung his club and
Galvin dodged back across the seat where another officer arrested
him.

The defendant filed certain requests for findings of fact and
rulings of law. In response to these requests, the Trial Court ruled
that the statute ( RSA 609-A:4 ( supp )) " does not require a
person to withdraw beyond a distance consistent with effective
police control of mob action "; that " withdrawal " within the
meaning of the statute " can be satisfied if the mob action moves ";
and that withdrawal " assumes " reasonable time to withdraw, and
reasonably safe means of withdrawal over public ways or public
property.

In response to requests for findings of fact, the Court found in
substance that there was no evidence that the defendant was
anywhere except in parking Lot No. 3 during the course of the
rioting at the Weirs on the night in question, that he had a Ford
convertible and a trailer in the lot, and was in or about his
automobile at the time the riot squad came to the lot. The Court
also found that there was no evidence to warrant a finding that
the defendant hurled any objects at police or addressed obscenities
to them. The Court denied a request for a finding that it was
reasonable for the defendant " to remain with his personal
property " in Lot No. 3 " after the command to withdraw. " A
request for a finding that he was not given a reasonable oppor-
tunity to withdraw after the " last command " to withdraw, was
gra ted, but the Court further found as follows: " that taking
eve thing into consideration, the defendant did have reasonable

opportunity to withdraw, and that in any event he had no intent to do so. In my finding relative to a reasonable opportunity I am not limiting the time to the opportunity after the last command to withdraw. "

The Court found that aside from the exit onto Foster Avenue, there was no public means of access to the lot except the banking next to the lot, and that "when the persons who fled parking Lot No. 3 retreated to the woods there was no further mob action in Parking Lot No. 3. "

The defendant contends that he must be held to have effectively withdrawn from the scene of mob action, within the meaning of the statute, because of the finding that there was no further mob action in Lot No. 3 after certain other persons fled, and the ruling that withdrawal "can be satisfied if the mob action moves. " Such a construction of the statute, and of the findings and rulings of the Trial Court cannot be accepted.

The findings establish that the defendant was "present during mob action" ( RSA 609-A:4( supp )), and that he did not "withdraw on being commanded to do so by [a] peace officer. " *Id.* This was a clear violation of the law. The fact that mob action at that location ceased after the command to withdraw was given cannot be held to convert the defendant's refusal to obey into compliance with either the command or the statute. To the extent that the findings and rulings made at the defendant's request can be interpreted to admit of his contention, they were erroneous, and unduly favorable to the defendant.

The finding that there was mob violence in Lot No. 3 was plainly warranted by the evidence, and the defendant's exception thereto is overruled. So also is his exception to the finding or ruling that "taking everything into consideration" the defendant had a reasonable opportunity to withdraw. Others who were present were able to withdraw, following the command to do so. There was evidence from which it could be found that the defendant would have been permitted to drive his vehicles from the lot had he responded with alacrity. Plainly he could have withdrawn upon foot as others did had he chosen to do so.

The ruling made at the defendant's request, that withdrawal "assumes a reasonably safe means of withdrawal over public ways or property, " placed an unnecessary restriction upon the application of the statute. Riots do not necessarily arise or confine themselves upon public property. That egress by means of public

ways or property shall be provided from a place where mob action occurs cannot be said to be implicit in the statute. It was error to read such a requirement into the statute.

The statute imposes upon one present during mob action a duty to withdraw upon command of a peace officer. If compliance with such a command should reasonably require passage over private property, the duty imposed would carry with it the privilege of compliance without liability to the property owner. See *Dederick* v. *Smith*, 88 N. H. 63; Restatement ( Second ), Torts, *s.* 211.

We do not adopt the defendant's contentions, his exceptions present no prejudicial error, and the order is

*Exceptions overruled.*

All concurred.