**STATE of Iowa, Appellee,**

v.

**Marvin D. ELLISTON, Appellant.**

**No. 52809.**

Supreme Court of Iowa.

June 11, 1968.

Edmund Eugene Fleming, Brian M. Olmstead, and William L. Kutmus, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Ray A.

Fenton, County Atty., Des Moines, for appellee.

MOORE, Justice.

On July 3, 1967 an information was filed in Des Moines Municipal Court charging defendant, Marvin D. Elliston, with unlawful assembly in violation of Code section 743.1. Subsequent to a plea of not guilty trial was set for July 19, 1967. On trial to the court he was found guilty and sentenced to serve five days in jail or pay a $50 fine. He has appealed.

Defendant-appellant asserts the trial court erred in denying his motion for dismissal on the grounds of insufficient evidence, overruling his demurrer, refusing a continuance and refusing his demand made on July 19 for a jury trial.

Section 743.1 provides: "Unlawful assembly. When three or more persons in a violent or tumultuous manner assemble together to do an unlawful act, or, when together, attempt to do an act, whether lawful or unlawful, in an unlawful, violent, or tumultuous manner, to the disturbance of others, they are guilty of an unlawful assembly, and shall be imprisoned in the county jail not more than thirty days, or be fined not exceeding one hundred dollars."

 I. In considering a claim of insufficient evidence we view the evidence in the light most favorable to the State. It is the fact-finder's function, not ours, to decide disputed questions of fact and to draw permissible inferences therefrom. The trial court's findings are binding upon us unless we are satisfied they are without substantial support in the evidence or clearly against the weight thereof. State v. Wesson, 260 Iowa 331, 149 N.W.2d 190, 192; State v. Steger, 259 Iowa 1147, 147 N.W.2d 45, 46; State v. Greer, 259 Iowa 367, 144 N.W.2d 322, 325; State v. Stodola, 257 Iowa 863, 865, 866, 134 N.W.2d 920, 921.

 The record discloses little factual dispute as appellant offered no evidence.

In the early morning hours of Sunday, July 2, 1967 a number of Des Moines police officers were dispatched to the area of 10th and 11th on Center Street to quell a loud and riotous disturbance. They there found 75 to 100 people milling about the area and six were engaged in a fight. One of the fighters suffered severe lacerations.

The crowd was unruly and aggressive. Shouts of profanity and phrases such as "get whitey", "black power" and "let's riot" were made and repeated. Various missiles such as bottles and rocks were hurled in all directions. Despite the efforts of many police officers to disperse the crowd and stop the disturbance, it continued for over an hour. Police officers were subjected to much abuse and rough treatment.

Officer Worthington testified he saw appellant Elliston, Larry Fountain and Marvin Williams in the crowd and "they were hanging around and making noise, and would not disperse when told to do so. They were standing in the middle of the street blocking traffic". A few minutes later Worthington observed Williams throw a pop bottle which struck officer Rounds on the shoulder.

After the crowd on Center Street was finally dispersed the disturbance within 15 minutes moved to 14th and University Ave., a distance of about six blocks. When the police arrived there they found many of the same persons, including Elliston, Fountain and Williams. The officers observed some one had thrown the Sunday morning papers in the middle of the street. Signs from a nearby car wash were also in the street. Shouting and hollering continued. Missiles were again thrown. One of the squad cars was struck by thrown bricks. The crowd was estimated at 30 to 40 persons.

Members of the Community Action Council joined the police in an effort to disperse the crowd. Elliston, like others, was told by police officers to move on and leave the scene. He with Fountain at first

moved away a few feet and then came back to a position near the paddy wagon. Subsequent to yet another command to Elliston and Fountain to disperse and their refusal to do so, they, along with Williams, were arrested and charged with unlawful assembly.

Appellant Elliston, Fountain, Williams and Anthony Colbert were tried together. At the conclusion of the trial the court reviewed the evidence and stated: "Fountain and Elliston, they were told to move on. The officer gave them a chance to walk away from the place. Did they take advantage of it? No, they were there to aid and comfort their friends and continue this riot. * * * As far as the law is concerned there is no question the State has proved their case beyond a reasonable doubt as to the guilt of all four defendants."

We are here only concerned with Elliston's appeal. Our review of the record discloses substantial support for the trial court's findings and conclusions. We do not agree with appellant's claim of insufficient evidence.

II. Immediately before trial appellant's counsel dictated into the record what he referred to as a demurrer. He therein raised the constitutionality of Code section 743.1 and sufficiency of the information. Appellant asserts the trial court erred in overruling his demurrer because, (1) the information was insufficient on its face, (2) the information violated the notice requirements of due process and (3) section 743.1 is unconstitutional. Procedural problems are not raised and we shall consider appellant's contentions without regard thereto.

The information filed against Elliston stated: "The defendant, Marvin D. Elliston, accused of the crime of Unlawful Assembly in Viol. of Chap. 743.1 of the Code of Iowa, 1966. For that the defendant on the 2nd day July, 1967, at the City of Des Moines, in the County of Polk, State of Iowa, did unlawfully and wilfully—Assem-

ble with more than three persons in a violent of (sic) tumultuous manner to do an unlawful act in violation of chapter 743.1 of the 1966 Code of Iowa."

■ The established rule is that an indictment or county attorney's information is sufficient if it uses the name given the offense by statute and the number of the statute in the Code. State v. Craig, 252 Iowa 290, 292, 106 N.W.2d 653, 654; Meeks v. Lainson, 246 Iowa 1237, 1239, 71 N.W.2d 446, 448; State v. Johnson, 212 Iowa 1197, 1199, 237 N.W. 522, 523. This rule is applicable to informations in Municipal Court. Breeden v. Nielsen, 256 Iowa 358, 363, 127 N.W.2d 661, 664; State v. Bostwick, 244 Iowa 584, 588, 57 N.W.2d 217, 219. See also Code section 773.34.

■ Here the information filed in the Municipal Court used the name given the offense and set out the Code number of the statute. It also stated the date of the offense and used some of the phraseology of section 743.1. If Elliston desired further details he should have sought a bill of particulars under section 773.6. State v. Bostwick, supra; State v. Lockhart, 241 Iowa 638, 640, 39 N.W.2d 589, 590.

The short form of charge such as used here has withstood constitutional assaults in view of the provision (section 773.6) which entitles an accused to a bill of particulars. State v. Olson, 249 Iowa 536, 550, 86 N.W.2d 214, 223; State v. Keturokis, 224 Iowa 491, 497, 276 N.W. 600, 603 and citations.

We cannot agree the information was insufficient on its face or violated the notice requirements of due process.

■ III. Appellant argues at length the unconstitutionality of section 743.1. He asserts the statute is so broad as to include within the scope of prohibition constitutionally protected rights of free speech and assembly, that it violates the due process requirements of adequate notice, subjects citizens to arbitrary and indiscrimi-

nate application based on the whims and caprice of individual law enforcement officers and it licenses the trier of fact to establish his own standard of guilt. We do not read the statute as subject to any of these constitutional infractions.

Appellant challenges the meaning of nearly every word and phrase of section 743.1 while posing varying hypothetical situations wherein innocent people could possibly be subjected to arrest under the statute. Included are examples of three or more children skating in the street, three people arguing violently on a street corner, people evincing passionate disagreement at a political rally, or public excitement attendant upon a parade. Such situations are cited no doubt to highlight the purported overbreadth of the statute in stifling free speech and assembly. We are not persuaded such groups are included within the statutory prohibition unless assembled to do an unlawful act or when together attempt to do an act in an unlawful, violent or tumultuous manner.

In American Communications Asso., CIO v. Douds, 339 U.S. 382, 412, 70 S.Ct. 674, 691, 94 L.Ed. 925, 951, the Supreme Court, when faced with similar contentions, said: "The argument as to vagueness stresses the breadth of such terms as 'affiliated,' 'supports' and 'illegal or unconstitutional methods.' There is little doubt that imagination can conjure hypothetical cases in which the meaning of these terms will be in nice question. The applicable standard, however, is not one of wholly consistent academic definition of abstract terms. It is, rather, the practical criterion of fair notice to those to whom the statute is directed. The particular context is all important."

■ Under the Fourteenth Amendment to the United States Constitution, a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Const. Co., 269 U.S. 385, 391, 40 S.Ct. 126, 70 L. Ed. 322; Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888; Winters v. People of State of New York, 333 U.S. 507, 509, 510, 68 S.Ct. 665, 92 L.Ed. 840; Giaccio v. State of Pennsylvania, 382 U.S. 399, 402, 403, 86 S.Ct. 518, 521, 15 L.Ed.2d 447, 450; In re Bacon, 240 Cal.App.2d 34, 49 Cal.Rptr. 322, 334.

Section 743.1 contains widely used and well understood words. Dictionary definitions need not be set out. The statute clearly and precisely delineates its reach in words of common understanding. It is a precise regulatory statute evincing a legislative judgment that certain specific conduct be prohibited. Its meaning is clear to men of intelligence including those whose duty it is to enforce it. Our conclusion is well supported by what is said in Edwards v. South Carolina, 372 U.S. 229, 236, 83 S.Ct. 680, 683, 9 L.Ed.2d 697, 702, 703, Cox v. State of Louisiana, 379 U.S. 559, 562, 85 S.Ct. 476, 479, 13 L.Ed.2d 487, 491, In re Bacon, supra, 240 Cal.App.2d 34, 49 Cal.Rptr. 332, 335, and Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L. Ed.2d 182 filed April 22, 1968.

■ Scores of opinions have been written on the question of whether a particular statute infringes upon the constitutionally protected rights of free speech and assembly guaranteed under the First Amendment to the United States Constitution. These rights are not unlimited. Mr. Justice Holmes long ago said: "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, 473.

■ In considering the constitutionality of a Louisiana statute prohibiting picketing near a court house Mr. Justice Goldberg, writing for the majority in Cox v. State of Louisiana, supra, 379 U.S. 559, 574, 85 S.Ct. 476, 485, 13 L.Ed.2d 487, 498, said: "Nothing we have said here or in

No. 24, 379 U.S. 536, 85 S.Ct. 453, 13 L. Ed.2d 471, is to be interpreted as sanctioning riotous conduct in any form or demonstrations, however peaceful their conduct or commendable their motives, which conflict with properly drawn statutes and ordinances designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect the administration of justice and other essential govermental functions.

"Liberty can only be exercised in a system of law which safeguards order. We reaffirm the repeated holdings of this Court that our constitutional command of free speech and assembly is basic and fundamental and encompasses peaceful social protest, so important to the preservation of the freedoms treasured in a democratic society. We also reaffirm the repeated decisions of this Court that there is no place for violence in a democratic society dedicated to liberty under law, and that the right of peaceful protest does not mean that everyone with opinions or beliefs to express may do so at any time and at any place. There is a proper time and place for even the most peaceful protest and a plain duty and responsibility on the part of all citizens to obey all valid laws and regulations. There is an equally plain requirement for laws and regulations to be drawn so as to give citizens fair warning as to what is illegal; for regulation of conduct that involves freedom of speech and assembly not to be so broad in scope as to stifle First Amendment freedoms, which 'need breathing space to survive.' NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405, 418; for appropriate limitations on the discretion of public officials where speech and assembly are intertwined with regulated conduct; and for all such laws and regulations to be applied with an equal hand. We believe that all of these requirements can be met in an ordered society dedicated to liberty. We reaffirm our conviction that '[f]reedom and viable government are * * * indivisible concepts.' Gibson v. Florida Legislative Comm., 372 U.S. 539, 546, 83 S.Ct. 889, 893, 9 L.Ed.2d 929, 935."

Applying these principles we must conclude section 743.1 is not unconstitutional as infringing on free speech and peaceful assembly. It rightfully protects against violence of which appellant was a part in the early hours of July 2, 1967. We find appellant's attacks on the constitutionality of section 743.1 untenable. The First Amendment rights of free speech and assembly are not so broad as to sanction riotous and unlawful conduct.

Statutes and ordinances with provisions similar to section 743.1 have been subjected to attacks as made here and have been approved in many jurisdictions. They strongly support our holding the statute is constitutional. In addition to authorities already cited, see Cole v. State of Arkansas, 338 U.S. 345, 70 S.Ct. 172, 94 L.Ed. 155; Abernathy v. State, 42 Ala.App. 149, 155 So.2d 586; Bloor v. State, 129 Neb. 407, 261 N.W. 840; City of Lewiston v. Frary, 91 Idaho 322, 420 P.2d 805; In re Bacon, 240 Cal.App.2d 34, 49 Cal.Rptr. 322; Koss v. State, 217 Wis. 325, 258 N. W. 860; State v. Bulot, 175 La. 21, 142 So. 787; State v. Galvin, 107 N.H. 441, 224 A.2d 574.

IV. Code section 780.3 provides: "The defendant shall, if he demands it upon entering his plea, be entitled to three days in which to prepare for trial." Defendant was released on his own bond on July 3 and arraigned and pleaded not guilty on July 10. His trial was set for July 19. Immediately before trial on July 19 appellant moved for a continuance on the ground his counsel had been employed only the day before. The motion was renewed during trial and on each occasion denied. Appellant assigns this as error.

In State v. Lowder, 256 Iowa 853, 861, 129 N.W.2d 11, 16, we quote this from State v. Maupin, 196 Iowa 904, 908, 192 N.W. 828, 830: "We have so often said

that authorities need not be cited in support thereof, in substance, that an application for continuance is addressed peculiarly to the sound discretion of the trial court, and that its ruling thereon will not be interfered with on appeal unless it clearly appear that the trial court has abused his discretion, and an injustice has resulted therefrom."

Here trial had been set for more than a week, at least 15 night working police officers were present to testify and other defendants involving the same incident were present and ready for trial. No motion for continuance had been made by appellant's counsel on the day of his employment.

Although not placing our approval on the trial court's rather brusque, summary and somewhat angry manner of denying counsel's motion for continuance we do not find the court abused his judicial discretion or that an injustice to appellant resulted. Appellant was ably defended. Indeed we are hard put to imagine what added defense could have been asserted if more time had been allotted.

 V. Code section 602.28 in the Municipal Court chapter provides that non-indictable misdemeanors "shall, except as otherwise provided in this chapter, be triable in the same manner as criminal actions in justice of the peace or other courts having jurisdiction thereof." Section 602.-39 states: "Demand for trial by jury may be made as provided by rule of court, and if not so made, the cause shall be tried by the court."

Rule 9 of the Des Moines Municipal Court provides: "In all criminal cases in which the defendant is entitled to a trial by jury on demand * * * the demand must be made three days prior to the day on which the cause is set for trial."

Appellant delayed request for a jury trial until the day of trial. He asserts rule 9 is unreasonable and the court erred in denying his request. We do not agree.

This same Des Moines Municipal Court rule 9 was before us in State v. Berg, 237 Iowa 356, 363, 21 N.W.2d 777, 780–781. There, after analyzing many authorities from other jurisdictions, we say: "In the case at bar the municipal court rule does not abridge, limit, or modify the constitutional right of an accused to trial by jury. Such right remains inviolate. The rule merely provides an orderly procedure by which the right may be exercised if the accused so elects." We also held in Berg rule 9 is not unreasonable.

Appellant refers to State v. Jennings, Iowa, 153 N.W.2d 485, wherein we were again confronted with rule 9 and its bearing upon the right to a jury. We recognized rule 9 but held Jennings had not waived a jury as she was not advised the charge against her was under a statute rather than a municipal ordinance until trial time. The facts in the Jennings case distinguish it from the case at bar.

We find no reversible error.

Affirmed.

GARFIELD, C. J., and LARSON, SNELL and STUART, JJ., concur.

RAWLINGS, MASON, BECKER and LeGRAND, JJ., dissent.

RAWLINGS, Justice (dissenting).

I respectfully dissent.

In Division IV of the majority opinion is this statement: "Although not placing our approval on the trial court's rather brusque, summary and somewhat angry manner of denying counsel's motion for continuance we do not find the court abused his judicial discretion or that an injustice to appellant resulted." This hardly portrays the true situation.

For some reason, not disclosed by the record, counsel was not retained by defendant until 24 hours before time scheduled for trial.

When defendant and his attorney entered the courtroom this is what happened, as disclosed by the record before us.

"MR. KUTMUS: [Defense Counsel] Comes now the defendant Marvin Elliston, through his attorney William Louis Kutmus, and requests for a separate trial in this case, and let the record show that four defendants are being tried together, wherein two of the defendants, one by the name of Marvin Williams and Anthony Colbert, these two individuals are—strike that. These two individuals' cases are being tried together with the defendant Mr. Elliston, and it's counsel's opinion that these cases should be segregated in that the facts do not arise out of the same circumstances. At this time, Your Honor, the defendant, Marvin Elliston, through his attorney, William Kutmus, moves for a continuance for the reason that I was retained yesterday, July 18, 1967, concerning this matter. The case was scheduled and is scheduled for trial on the 19th of July, one day later, and in view of that, Your Honor, I believe the cases bear out that an attorney has a right to prepare his case, and in view of this counsel for the defendant, Mr. Elliston, feels that he has had not enough time to prepare this case. For that reason, Your Honor, the defendant's attorney, William Kutmus, moves to continue his case.

"THE COURT: Motion will be overruled.

"MR. BERGESON: [Assistant Polk County Attorney] Your Honor, for the purposes of the record the State would like to state that it does not in any way offer resistance to defense counsel's motion and would point out to the Court Section 234.1 where it states that one case may be tried and convicted alone.

"THE COURT: I know what the law is, and all the motions are overruled. You gentlemen ready for trial?

"MR. KUTMUS: Honor, I still have a record to be made, if I may.

"THE COURT: All right.

"MR. KUTMUS: At this time, Your Honor, the counsel for the defendant, Mr. Elliston, moves and demands for a jury trial as guaranteed to him by the Sixth Amendment of the United States Constitution. We would argue that the defendant's due process has been violated if this jury demand is not granted. Since the defendant would have to be charged with notice that the rules of this Court provide a three-day notice to be filed or requested orally to the Court by the defendant, and that three-day notice begins three days prior to the date of trial. Such a rule, which has been promulgated by the Municipal Court Judges, is not a public record. It's a record that's available primarily to the attorneys in and around Polk County, and in view of that I believe to charge the defendant with a special kind of knowledge as to the rules of this particular Court would be in violation of due process. In view of that, Your Honor, the defendant moves for a jury trial.

"THE COURT: Your motion will be overruled.

"MR. KUTMUS: At this time, Your Honor, the defendant requests to withdraw the plea of not guilty and demur to the Information.

"THE COURT: I thought they cut out demurrers.

"MR. KUTMUS: There is [sic] three pleas in Iowa, Your Honor, guilty, not guilty, demur.

"THE COURT: All right, you may demur.

"MR. KUTMUS: Your Honor, for clarity of the record, I am demurring to the information prior to entering a plea of not guilty. I believe the rules of criminal procedure provide for that method of procedure. To begin with the counsel for the defense would ask and request that the Court grant him sufficient time to prepare a brief, a written brief, to sustain his demur [sic].

"THE COURT: Your motion is overruled. We had that matter up yesterday.

"MR. KUTMUS: Then, Your Honor, at this time I will argue that Chapter 742.1 or 743.1 under the 1966 Iowa Code is unconstitutional for the following reasons: That the statute on its face is unconstitutional in that it's void for vagueness. In other words, there are no divide [sic] lines, no standards established or set forth in said 743.1 to put the defendant on notice of whether or not he's in violation of any particular act. That's [sic] Chapter 743.1 of the Iowa Code is unconstitutional in that said act does not at all contemplate the intention of the defendant to do a wrongful act. Hence, since the requirement of intent is not specified in the statute we would assail the statute as being unconstitutional for want of such intent. That 743.1 is unconstitutional in that it abridges the first Amendment of the United States Constitution as well as Article 1, Section 20 of the Iowa Constitution which allows for lawful assembly, or the assembly of persons more than one, and that said act abrogates and abridges this right.

"(Off the record discussion between counsel and the Court.)

"That the said statute in question is unconstitutional in that it violates the Fifth Amendment of the United States Constitution as well as the 14th Amendment in that said statute does not provide for notice to him of the variance which is incorporated in the Information. In connection with this the statute is too broad, and to protect myself, Your Honor, I want to stress the fact that I was notified yesterday that this case was pending today for trial, and I would again reiterate my request for a motion for continuance.

"THE COURT: You still haven't shown me anything yet where you are entitled to one as far as your motion is concerned. You haven't brought out anything yet. Gentlemen, are you ready for trial? Let's get to trial on this matter.

" * * *

"MR. BERGESON: At this time, Your Honor, I would like to call Lt. Moran to swear to these Informations.

"THE COURT: All right, sign these Informations.

"(Lt. Moran signed and swore to the Informations.)

" * * *

"THE COURT: Now gentlemen, if I were sure you were ready for trial we would go ahead. But here's what I'm going to do. I don't know if you're ready or not. We are going to take a recess for about ten minutes. Make up your mind whether you are ready for trial or not during the next ten minutes.

"(A ten minutes recess was taken.)

"THE COURT: State may call its first witness.

"MR. KUTMUS: Your Honor—

"THE COURT: All right, what is it?

"MR. KUTMUS: At this time the defendant Marvin Elliston, through his attorney William Kutmus, requests the Court to grant him time, 24 hours, to make application for writ of certiorari to question the legality of your dection [sic] on the demur [sic].

"THE COURT: Let the record show that the motion is overruled. We are going to trial right now.

"MR. BERGESON: Your Honor, at this time comes now the County Attorney and makes a motion that each of these four Information—to amend the Informations by deleating [sic] the words 'attempt to incite a riot' to 'to the disturbance of others.'

"THE COURT: Your want to make this amendment before any evidence is taken?

"MR. BERGESON: Yes.

"THE COURT: You may do so.

"MR. KUTMUS: In view of that, Your Honor, defendant again requests a motion

for continuance to prepare himself for the amendment that has been made by the State.

"THE COURT: Motion overruled.

"MR. KUTMUS: At this time, Your Honor, the defendant Mr. Marvin Elliston respectfully demurs to the Information as amended in that said Information is insufficient on its face, vague and too broad, does not reveal a crime against the defendant, and that the Information on its face is a defense to the charge and we would urge the same demur [sic] that was heretofore urged prior to the amendment.

"THE COURT: Motion overruled.

" * * *

"MR. KUTMUS: Your Honor, may I —I believe you stated at the—prior to the recess that you would grant us ten minutes in which to decide whether or not we were ready to try this case. In view of that, Your Honor—

"THE COURT: Your ten minutes are up.

"MR. KUTMUS: Yes Your Honor, and the defendant William—or Marvin Elliston, through his attorney William Kutmus, respectfully states that this ten minute recess is not sufficient time to prepare for this case.

"THE COURT: All right, let's take testimony."

In my humble opinion the foregoing, standing alone, amply discloses this defendant was not accorded a fair trial. In support of this conclusion see Amendments 6 and 14, United States Constitution; Article 1, sections 9 and 10, Constitution of Iowa; Chapman v. State of California, 386 U.S. 18, 21–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705; Turner v. State of Louisiana, 379 U. S. 466, 471–472, 85 S.Ct. 546, 549, 13 L. Ed.2d 424; Rideau v. State of Louisiana, 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663; Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 794–796, 9 L. Ed.2d 799, 93 A.L.R.2d 733; Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639,

1642, 6 L.Ed.2d 751; In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942; Powell v. State of Alabama, 287 U.S. 45, 70–71, 53 S.Ct. 55, 64–65, 77 L.Ed. 158, 84 A.L.R. 527; McDonald v. Moore (5 Cir.), 353 F.2d 106, 109–110; State v. Gionfriddo, 154 Conn. 90, 221 A.2d 851, 855; State v. Gurney, 249 La. 71, 185 So. 2d 19, 21–22; State v. Borst, 278 Minn. 388, 154 N.W.2d 888, 889–895; 16A C.J.S. Constitutional Law § 591, page 659; 16 Am.Jur.2d, Constitutional Law, section 550, page 946 and 575, page 980; Annos. 17 A. L.R.3rd 1181, 1244; and Annos. 94 A.L.R. 2d 826. See also American Bar Association, Canons of Judicial Ethics 10 and 15, and Handbook for Judges, American Judicature Society, 1961, page 66.

In addition there exists a serious question as to whether a valid or legally sufficient information was on file until after defendant and his attorney walked into the courtroom. In this regard see sections 602.28, 762.2, 762.15, 773.43–773.47, Code, 1966, and State v. Ford, 222 Iowa 655, 269 N.W. 926.

By what authority did the court fix trial time until an information had been signed which complied with the statutory mandate? Surely an unsigned, unverified instrument does not qualify as an information charging commission of a public offense until signed and verified. In my opinion defendant was entitled to a continuance for this reason, if for no other. See in support hereof State v. French, 240 Iowa 1, 25, 35 N.W.2d 1.

Furthermore, belated amendment of the information accorded defendant an additional cause for continuance. See State v. Jennings, Iowa, 153 N.W.2d 485, 488, and State v. Bamsey, 208 Iowa 802, 804–805, 226 N.W. 57.

Understandably, in some cases, attorneys may unduly try the patience of the court. But in this instance there was no real or apparent provocation for trial court's harsh and arbitrary conduct.

In my humble opinion section 743.1, Code, 1966, is sufficiently certain and spe-

cific to meet constitutional requirements. But this does not mean defendant was here dealt with fairly.

I would reverse and remand.

MASON, BECKER, and LeGRAND, JJ., join in this dissent.