142 So. 787

**STATE v. BULOT et al.**

**In re BLAISE et al.**

No. 31842.

May 23, 1932.

Rene A. Viosca and Oliver S. Livaudais, both of New Orleans, for applicants.

Leander H. Perez, Dist. Atty., of New Orleans, for respondents.

ODOM, J.

It is charged in a bill of information filed by the district attorney that these defendants, eleven in number, "did wilfully and unlawfully assemble for the unlawful purpose of breaking and entering into the election polling place and assaulting the commissioners and officers of election and then and there seizing and destroying the election boxes and ballots cast and to destroy evidence of the

result of the Democratic primary election held at Boothville in the fifth ward of this Parish (Plaquemines) on said date and with the intent then and there to disturb the public peace and to cause public disturbance."

The charge was brought under Act 7 of the Extra Session of 1872. The accused were tried and found guilty. Not being entitled to an appeal under the fines and sentences imposed, they applied to this court for writs of certiorari, mandamus, and prohibition, which were granted. In compliance with said writs, the record was sent up, and the case is now before us for review.

The defendants, in limine, attacked the proceedings against them on various grounds; the chief one being that the act under which they were prosecuted is unconstitutional.

1. The purpose of Act 7, Extra Session of 1872, as expressed in its title, is:

"To Suppress Riotous and Unlawful Assemblies, and to provide for the punishment of persons participating therein, and to define the duties of officers of the State in regard thereto, and to punish officers and others for neglect or refusal to discharge and perform duties imposed upon them by law."

Section 1 of the act reads as follows:

"Section 1. That if any three or more persons, being armed with clubs or any other dangerous weapon or weapons, or if any ten or more persons shall unlawfully assemble in the City of New Orleans, or in any town, city or parish within the State for any unlawful purpose, or with intent to disturb the public peace, or to cause public disturbance, the persons so assembled shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less that one hundred dollars nor more than five hundred dollars, and by imprisonment not less than three months nor more than six months, at the discretion of the court."

The purpose or object of the act as expressed in its title is to suppress "riotous and unlawful assemblies." But section 1 thereof makes no mention of "riotous assemblies." It provides that, if ten or more persons shall unlawfully assemble for an unlawful purpose, or with intent to disturb the peace, or to cause a public disturbance, they shall be guilty of a misdemeanor.

That part of the section referring to the offenses denounced is written in the disjunctive. It is made a misdemeanor for persons to "unlawfully assemble * * * for any unlawful purpose," and a misdemeanor to assemble "with intent to disturb the public peace," or "with intent to cause public disturbance." From this language, as well as that used in subsequent sections of the act, it is clear that the lawmaker intended to make it a misdemeanor for ten or more persons to assemble "for any unlawful purpose," even though the assembly might be peaceable.

Counsel for relators argue that the act is too vague and indefinite, in that the terms "unlawfully assemble" and "unlawful purpose" are not defined with any degree of legal certainty, and they cite the recent case of City of Shreveport v. Thomas Moran, 174 La. 271, 140 So. 475, decided Feb. 29, 1932, not yet reported [in State reports]. In that case the defendant was convicted under an ordinance making it unlawful for any person to commit "a public nuisance," and it was held that the ordinance was too vague and indefinite to be sustained.

▉ That case is not in point here. The word "unlawful" means that which is not lawful or that which is contrary to some express provision of the law. The terms "unlawfully assemble" and "unlawful purpose," as here used, mean to assemble for the purpose of doing some act or thing which the law prohibits. So that, in order to determine whether a number of persons assemble for an unlawful purpose, it would be necessary to determine, first, what the purpose of the assembly was; and, second, whether the act intended to be done is prohibited by law. A reference to the statutes of the state would enable the court to determine whether the purpose of the assembly was lawful or unlawful. We think the statute is not amenable to this particular objection.

2. There is, however, another objection to the act which we think is fatal. It is provided by section 2 thereof that, "if such unlawful assembly" shall take place within the limits of the city of New Orleans or within the Metropolitan police district of New Orleans, "it shall be the duty of the Superintendent of Police, or some officer of said Metropolitan Police * * * to go among the persons so assembled * * * and in the name of the State command all the persons so assembled, immediately and peaceably to disperse, and if the persons so assembled shall not thereupon immediately and peaceably disperse, it shall be the duty of such officer to command the entire police force, if necessary, as well as the assistance of all persons there present, to seize, and arrest, and secure in custody the persons so unlawfully assembled, in order that they may be proceeded against according to law; and for the purpose of so dispersing or arresting persons so unlawfully assembled such officer or officers may cause such force of police and posse comitatus to be armed in such manner as he shall deem adequate to accomplish such arrest."

Section 3 of the act provides that, "if such unlawful assembly" shall occur at any other place in the state, it shall be the duty of the sheriff, any of his deputies, or a justice of the peace "to go among the persons so assembled * * * and in the name of the State to command all the persons so assembled immediately and peaceably to disperse," and, if they refuse, to arrest them.

It will be observed that the term "riotous assembly" is not used in these sections of the statute, but instead the term "unlawful assembly" is used all through.

The objectionable feature of this act is that the officers mentioned are authorized and empowered to suppress or disperse any assembly, even though peaceable, the question whether the purpose of the assembly is unlawful being left for them to determine.

▉▉ Under the Bill of Rights, § 5, people have the right "peaceably to assemble," and that right cannot be abridged or interfered with. Under no theory can it be said that a peace officer or any one else can be vested with the power and authority to suppress or disperse an assembly of people, if the assembly be peaceable and for a lawful purpose. But that power and authority is, in effect, conferred upon certain officers by this act. They are authorized and directed to go to the place of "unlawful assemblies" and to suppress them. But how and by what right are they to determine that such assembly is "unlawful" or for an "unlawful purpose,"

if it be in its nature peaceable? Manifestly no peace officer can or should be vested with authority to say that any peaceable assembly is or is not lawful or for a lawful or an unlawful purpose. That is necessarily a judicial function.

If three or more persons engage in a riot, which is commonly understood to be a wanton, disorderly, and tumultuous disturbance of the peace or any other interference with the rights of others, a peace officer would not have to determine whether their assembling was lawful. The outward appearances, the demonstration itself would indicate its unlawful purpose. In such case, peace officers would have the right to interfere, just as they have the right to arrest without a warrant persons apprehended in the act of disturbing the peace or in the commission of any other offense or crime. But, if an assembly is a peaceable one, a different situation is presented.

This act confers upon certain officers the power to jeopardize and interfere with the constitutional rights and privileges of peaceable citizens, in that they may, under its express provisions, suppress any peaceable assembly, upon the mere pretext that its purpose is unlawful.

■ By the passage of this act, the Legislature of 1872 transcended its constitutional authority, and for that reason the act is void.

■ 3. It is not seriously disputed that sections 2 to 8 of the act are unconstitutional. But counsel for the state argues that section 1 is separable from all the others and is a complete law within itself and may stand alone, and that, inasmuch as these defend-

ants are charged under section 1, which it is argued is constitutional, they have no concern with the other sections.

Section 1 of the act is not separable from the other sections. On the contrary, it is inseparable from them. The first section is intimately and inseparably linked to the others, in that the subsequent sections provide the machinery for the enforcement of the act. The act must stand or fall as a whole.

For the reasons assigned, it is adjudged and decreed that Act 7, Extra Session of 1872, is unconstitutional and void.

It is further ordered that the preliminary writs of mandamus, certiorari, and prohibition heretofore issued herein be made peremptory, that the proceedings against these accused persons and the judgment convicting them, be quashed and set aside, and that they be forthwith discharged.

BRUNOT, J., concurs in the result.

O'NIELL, C. J.

I concur in the decree rendered in this case, in so far as it sets aside the verdict and sentence and declares Act 7 of the Extra Session of 1872 to be of no effect; but I rest my concurrence upon the proposition that section 1 of the act was so closely connected with, and dependent upon, the other sections, relating to the Metropolitan police district, created by Act 74 of 1868, that the repeal of the statutes relating to the Metropolitan police force, by Act 35 of 1877, had the effect of repealing section 1, as well as the other provisions, of Act 7 of the Extra Session of 1872, p. 45. Although this act is referred to as an act of the extra session of 1872, because it was enacted at the extra session convened

on the 9th of December, 1872, it was in fact approved on the 4th of January, 1873. That was when Louisiana had two Legislatures, each claiming to be the lawful one, and both in session in New Orleans. The history of the time shows that the only purpose of the statute, enacted by the Pinchback government, creating the Metropolitan police force, was to break up the McEnery Legislature. On this subject, counsel for the defendants refer us to some interesting passages in the History of New Orleans, by Professor John Smith Kendall, vol. 1, pp. 354–356. It is certain that the first section of Act 7 of the Extra Session of 1872 would not have been enacted without the other sections relating to the Metropolitan police force. All legislation relating to the Metropolitan police force was repealed by Act 35 of 1877, p. 57.