238 So.2d 352

James Ellis BAINES, Jr.

v.

CITY OF BIRMINGHAM.

6 Div. 6.

Court of Criminal Appeals of Alabama.

June 16, 1970.

Rehearing Denied June 30, 1970.

Cooper, Mitch & Crawford, and George C. Longshore, Birmingham, for appellant.

Herbert Jenkins, Jr., and William C. Walker, Birmingham, for City of Birmingham.

CATES, Judge.

Appeal from conviction of ordinance breach. Fine, $100.00 and 90 days in the Birmingham Jail were imposed.

The City's complaint in the Circuit Court was as follows:

"* * * that James Ellis Baines, Jr. within twelve months before the beginning of this prosecution on, to-wit: September 10, 1967, and within the City of Birmingham at, to-wit: Woodrow Wilson Park, a public place, did take part in an assembly which the officer then in command of Birmingham Police headquarters in City Hall, Lt. R. J. Long, had good reason to believe was an unlawful assembly, to-wit: an assembly of two or more persons who, with intent to carry out a common purpose, conducted themselves when assembled, so as to cause persons in the neighborhood of such assembly to fear on reasonable grounds that the persons so assembled, including defendant, would commit a breach of the peace or provoke others to do so and further said Lt. R. J. Long had good reason to believe that it was necessary in order to prevent a breach of the peace, a disorder or a riot to regulate passage or occupancy upon such place and did so by informing said James Ellis Baines, Jr., and others taking part in said assembly that said assembly was an unlawful assembly and that said persons engaged in said assembly, including said James Ellis Baines, Jr., would have to depart and said James Ellis Baines, Jr., after being informed that said assembly was unlawful and that he would have to depart did wilfully

and intentionally, without lawful excuse, remain on said Woodrow Wilson Park and did fail to depart after being warned to do so, contrary to and in violation of Section 14–13 of the General City Code of Birmingham of 1964."

Lt. Long, the senior police officer present, testified that there were 200 to 300 people in Woodrow Wilson Park on the afternoon in question. About fifty were clustered with Baines about the base of the Confederate statue. Surrounding them were hecklers. There was apparent physical contact: "There was some pushing and shoving from both sides." (R. 20)

Baines was waving a stick, offering to bash in the heads of some youthful hecklers. At one point he passed the stick over to Walker.

After Long ordered the crowd to disperse, Baines remained even after Long's subsequent orders to go.

§ 14–13, supra, reads as follows:

"Whenever the chief of police has good reason to believe that an unlawful assembly on a street or in a public place is in progress or is planned to be held, the chief of police, if he has good reason to believe that it is necessary to prevent a breach of the peace, a disorder or a riot, may prohibit, for the time being, persons from occupying or passing on any street or public place where such breach of the peace, disorder or riot is threatened or is believed by the chief of police likely to occur, and to otherwise regulate passage or occupancy upon such street and place.

"The chief of police or, in his absence, the officer mentioned in section 14–16, may deputize any member of the police department to impose the prohibitions or regulations upon occupying or passing on streets or public places hereinabove provided for. No person, after being duly informed of such prohibition or regulation, shall wilfully and intentionally, without lawful excuse, attempt to go after being warned not to do so, or remain on any such street or public place and fail to depart after being warned to do so. (Ord. No. 63–17, § 12.)"

Coupled therewith in the same chapter, we find § 14–16:

"In the absence of the chief of police from the police headquarters in the City Hall, the officer in command of headquarters in the absence of the chief of police shall have all authority conferred by any section of this chapter on the chief of police. In order to be absent within the meaning of this section, it shall not be necessary that the chief of police be absent from the city or that he be off duty. If he is not physically present in police headquarters, then that officer in command of police headquarters while the chief of police is not present therein shall have all authority conferred by this chapter on the chief of police. (Ord. No. 63–17, § 12.)"

§ 14–1 defines an assemblage as unlawful as follows:

"Unlawful assembly. An assembly which is unlawful according to the common law of England, section 407, Title 14, Code of Alabama, or any other state act or statute. * * *"

Blackstone, citing Coke, says iv Comm. 146:

"An unlawful assembly is when three or more do assemble themselves together to do an unlawful act, as to pull down enclosures, to destroy a warren or the game therein; and part without doing it, or making any motion towards it."

Code 1940, T. 14, § 407 reads:

"Unlawful assemblies.—If two or more persons meet together to commit a breach of the peace, or to do any other unlawful act, each of them shall, on conviction, be punished, at the discretion of the jury, by fine and imprisonment in the county

jail, or hard labor for the county, for not more than six months."

Thus § 407, supra, relaxing from "three or more" to "two or more" is in derogation[1] of the common law; but only as to one. Here there were more than two persons assembled.

The city has supplemented the appellant's statement of facts. Hence, we are entitled to glean (from the two statements of facts in the opposing briefs) the tendencies of the evidence supportive of the verdict; i. e. that appellant upon request refused to depart from the place of the gathering.

In this case appellant has assigned seven claims of error.

■ Assignments of error are mandatory in appeals from convictions of ordinance breaches. Ray v. City of Prichard, 45 Ala.App. 32, 222 So.2d 345, cert. den. 396 U.S. 931, 90 S.Ct. 261, 24 L.Ed.2d 228.

■ The first two assignments complain of the overruling of a motion to quash the complaint and of demurrers thereto. Both these pleadings claim that § 14–13, quoted above, on its face proscribes free speech and public assembly and is void for vagueness. Overruling a motion to quash in a municipal case is not revisable on appeal. Thomas v. City of Eufaula, 44 Ala.App. 643, 218 So.2d 813.

Whenever, as was done here, a police officer gives a prospective unlawful assembler a reasonable opportunity to disperse, the problem of making the policeman an ad hoc judge is reduced to an examination of the lawfulness of the assembly. C. f. State v. Bulot, 175 La. 21, 142 So. 787.

Using the outline employed in Anno. 71 A.L.R.2d 875, we take up first the number proved to have made up the assembly after it became allegedly unlawful. Under whichever minimum number, i. e. two or three, there was evidence before the jury

that during the pushing and shoving and Baines's stick waiving there were at least three engaging in fighting or threatening to fight the hecklers.

This same evidence would support a common intent.

As to proof of a lawful assembly turning into an unlawful one, there was evidence before the jury that when Lt. Long first appeared the pushing and shoving was already in progress. The tumult subsided for a while then broke out again.

One Mazer came into the park and seemed to lead the hecklers, though this was after Lt. Long's first reading the riot act to the crowd. It is inferable from the evidence that Baines (and probably Walker) replied in kind to Mazer's taunts. Certainly Baines had not left.

As to § 6 of the Annotation, supra, it would seem that Baines and backers—as well as the hecklers—alternated between lawful free speech and unlawful offers to do combat.

■ Accordingly, we consider that there was no error in overruling the demurrer to the City's complaint. We find no invidious prior restraint on free speech or assembly inherent in § 14–13.

Assignment of Error No. 3 complains that the trial court erred in overruling appellant's motion to suppress the City's evidence. Such a motion is unknown to our jurisprudence except as to unlawfully seized objects or possibly illegally obtained confessions.

Moreover, if it was meant to be a motion to exclude, the circuit judge correctly ruled that it came too late. Taylor v. State, 15 Ala.App. 72, 72 So. 557; McElroy, Law of Evidence in Ala. (2d ed.), § 449.05.

Assignment of Error No. 4 relates to an *oral* request for a jury charge (R. 128). Under Code 1940, T. 7, § 273, tendered

---

1. On principles of severability, we construe § 14–1 without reference to any Alabama statute.

charges—as in Federal trials—must be in writing.

The fifth assignment complains of the form of guilty verdict. This although appellant did not tender such a form in writing along with his requested charges.

Moreover, it is abundantly clear that the court below told the jury that the form was but a shorthand rendition of all that was embraced in the charges given should they find beyond a reasonable doubt that Baines was guilty under all the evidence. The last of his direction reads:

"THE COURT: All right. You, ladies and gentlemen, of course understand that the charge of the Court with respect to the various elements of guilt that I have given you, must be determined by you. The various things that I have charged you on, some several of them, that you must determine before you find the defendant guilty as charged. This is the form of the verdict, itself. It does not undertake to embrace all of the elements that would be involved in your making a determination of guilt or innocence. This is merely the form of finding the defendant guilty or not guilty.

"All right. You may take the case."

Assignment of Error No. 6 relates to refused Charge No. 1:

"Defendant's requested charge no. 1

"I charge you ladies and gentlemen of the jury that unless you believe from the evidence that the Defendant gathered with two or more persons who shared a common intent to create a breach of the peace and did create a breach of the peace you cannot return a verdict of guilty."

This instruction would mislead a jury because, if for no other reason, it would burden the State with proving to the required degree that Baines "gathered" with the others. Had it used "assembled" or "met" a more accurate legal concept would have been laid down. Also, the charge ig-nores the circumstance of a peaceable assembly ab initio for a lawful purpose metamorphosing into an unlawful meeting.

Assignment No. 7 complains of the refusal of Charge No. 4:

"Defendant's requested charge no. 4

"I charge you ladies and gentlemen of the jury that the right to peaceably assemble in a public park is a right protected by law and it is the duty of the police to protect those in the exercise of such rights from persons who would create a disturbance."

This charge does not predicate the right upon the jury's finding the assembly to be peaceable. In Abernathy v. Ala., 380 U.S. 447, 85 S.Ct. 1101, 14 L.Ed.2d 151, the going about in a peaceful way, lawful conduct— though irritating to others—could not be the basis of incitement to a breach of the peace.

We distinguish the tendencies of the evidence here. Hence, Charge No. 4 was abstract.

The sufficiency of the evidence was not put to the trial court. That is, there was (1) no motion at the close of the City's evidence before the defendant presented his case for the court to exclude the City's evidence and discharge the jury with judgment sine die for the defendant; (2) no affirmative charge tendered in writing at the close of all the evidence; (3) nor any motion for new trial. Gillogby v. State, 40 Ala.App. 640, 120 So.2d 640; McElroy, Law of Evidence in Ala. (2d ed.), § 449.05.

■ In a public place one who chooses to stand his ground and fight where presumptively there is an avenue of peaceful retreat is in a poor posture to claim self-defense.

■ In conclusion, taking the conflicting statements of facts in the briefs of both parties in the light most favorable to the prosecution, we consider the jury could have inferred that at the time of the *last*

order to disperse Baines was participating in an unlawful assembly without cover of the First Amendment.

Since the statute of limitations has run on any State misdemeanor compassed in the same transaction, no problem arises under Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, mss. April 6, 1970. We express no opinion as to whether *Waller* renders void § 36–56 of the Birmingham City Code. See also § 170, Cons. of Ala.1901.

Having considered all appropriate assignments we find in them no error. The judgment below is due to be

Affirmed.