McNeill **CONINE** and Betty J. Conine, Appellees,

v.

C. Robert **LEIKAM**, Appellant.

No. 49683.

Supreme Court of Oklahoma.

Oct. 25, 1977.

Sonberg & Waddell, Richard T. Sonberg, Gene C. Buzzard, Tulsa, for appellees.

George S. Thompson, Tulsa, for appellant.

LAVENDER, Vice Chief Justice:

McNeill Conine and Betty J. Conine (Conines), appellees, brought an action for breach of contract against Leikam & Price, Inc. (corporation), an Oklahoma corporation. The contract involved the purchase of a residential lot and the construction of a house on that lot. On a jury verdict for the Conines, a money judgment was entered against the corporation.

The Conines, as judgment creditors of the corporation, by garnishment sought to apply to the judgment an indebtedness said to be owed by garnishee, Robert Leikam (Leikam), appellant, to the corporation. Leikam was president, director, and owner of fifty percent of the stock of the corporation. He resigned as an officer and director in January 1973, to be effective August 31, 1973, the end of the corporate fiscal year. His stock was purchased by the corporation in September 1973 for the amount he owed the corporation.

The garnishee's answer of no indebtedness was placed at issue by the judgment creditors. Evidentiary hearing was held with the witnesses being the garnishee and certified public accountant generally overseeing the corporation's tax returns. The trial court found there was an indebtedness owed by the garnishee to the corporation. That indebtedness had not been paid or cancelled through the repurchase of its stock by the corporation from the garnishee, for the stock purchase was in violation of the Oklahoma Business Corporation Act, 18 O.S.1971, § 1.1 et seq. The garnishee was held liable on the judgment in an amount of not more than that owed by the garnishee to the corporation. Garnishee appeals.

Leikam argues (1) the amounts he received from the corporation were not loans but draws against future earnings; and (2) if loans, then were paid through the stock repurchase.

Leikam testified he was indebted or owed monies to the corporation that was to be cancelled by the stock sale. As to whether the loans were proper or in violation of 18 O.S. § 1.175 so as to carry a personal liability is not decisive, here. The certified public accountant testified Leikam's draws were reclassified by the accountants as notes receivables to the corporation. Leikam received the monies from the corporation. No accounting shows payment by a debit against actual earnings. Leikam owed the corporation these monies whether or not receipt of the monies constituted prohibited loans under § 1.175. A director withdrawing corporate money for his own personal use, under the guise of advance salary, dividends, or *otherwise*, and charged on the corporate books against him is liable to the corporation therefor until fully paid. *Adams v. Mid-West Chevrolet Corporation,* 198 Okl. 461, 179 P.2d 147, 149 (1947).[1]

---

1. Court Syllabus 5 reads, in part:
   "Where a director of a corporation withdraws money belonging to the corporation,

for his own personal use, under the guise of advance salary, dividends, or otherwise, and has the same charged against him on the

▋ Unauthorized purchase of shares under the Oklahoma Business Corporation Act has been characterized as any unlawful purchase.[2] We believe that characterization is correct. "Unlawful" is that unauthorized by law. "Unlawful" as applied to agreements, and the like, denotes they are ineffectual in law, for they involve acts which, though not positively forbidden, are disapproved by the law and are therefore not recognized as the ground of legal rights because they are against public policy. Black's Law Dictionary, 4th Ed., p. 1705, "Unlawful."[3] In the present case, if the stock purchase by the corporation was contra to and unauthorized by the Business Corporation Act, as determined by the trial court, then there was an ineffective sale and an ineffective payment or cancellation of the debt owed to the corporation as claimed by the garnishee.

Leikam argues the sale is authorized by § 1.136, subd. a(3).[4] There, purchase by a corporation of its own shares, in a collection of a debt to it, is allowed out of "any surplus." That term is not defined by the Business Corporation Act. Neither is there a definition of "earned surplus" or "paid in surplus" in conjunction with payment of

dividends.[5] Restrictions on dividend payments are recognized to be closely related to restrictions on purchase of shares.[6] This court has held "any surplus" as used in § 1.136, subd. a(3) is not limited to just earned surplus.[7]

▋ Here, Leikam contends an item of some $32,500, described by the accounting witness as deferred income, is includable in "any surplus," as allowed by § 1.136, subd. a(3). That item results from the accounting performed for income tax returns. The accounting witness testified the federal Internal Revenue Service allows the deferring for income tax purposes any income from a construction contract until completed. That witness approved the purchase of stock under generally accepted accounting principles, but he refused to say the stock purchase was authorized by the Business Corporation Act. That refusal was based on his failure to know the meaning of "surplus" in that act.

Although superficial by its simplicity, the "surplus" concept allows only "earned surplus" and "unearned surplus." The term "unearned surplus" suggests something oth-

books of the corporation, he is liable to the corporation therefor together with interest thereon until the money so withdrawn is fully repaid, * * *."

2.  Vliet, *The Oklahoma Business Corporation Act, II. A Survey,* 3 Okla.L.Rev. 51, 69.

3.  "UNLAWFUL. That which is contrary to law or unauthorized by law. *State v. Chenault,* 20 N.M. 181, 147 P. 283, 285. That which is not lawful. *State v. Bulot,* 175 La. 21, 142 So. 787, 788. The acting contrary to, or in defiance of the law; * * * disregarding the law. * *.

·  " 'Unlawful' and 'illegal' are frequently used as synonymous terms, but, in the proper sense of the word, 'unlawful,' as applied to promises, agreements, considerations, and the like, denotes that they are ineffectual in law because they involve acts which, although not illegal, i. e., positively forbidden, are disapproved of by the law, and are therefore not recognized as the ground of legal rights, either because they are immoral or because they are against public policy. It is on this ground that contracts in restraint of marriage or of trade are generally void. Sweet. And see *Hagerman v. Buchanan,* 45 N.J.Eq. 292, 17 A. 946, 14 Am.St.Rep. 732; *Tatum v. State,* 66 Ala. [465] 467. *People v.*

*Chicago Gas Trust Co.,* 130 Ill. 268, 22 N.E. 798, 8 L.R.A. 497, 17 Am.St.Rep. 319."

4.  § 1.136. Purchase and redemption of shares
    "a. A domestic corporation may, subject to the provisions of this Act [1] and any further limitations or restrictions in the articles of incorporation, purchase or otherwise acquire its own shares only as follows:
    (1) Out of earned surplus;
    (2) Out of any surplus or out of stated capital if such shares have a liquidation preference, or to eliminate fractional shares;
    (3) *Out of any surplus in order to collect* or compromise in good faith *a debt,* claim, or controversial amount, even though such shares do not have a liquidation preference; or
    (4) Upon the conversion of shares pursuant to the articles of incorporation.
    * * *."  (Footnote deleted.)

5.  See n. 2, supra, p. 58.

6.  See n. 2, supra, p. 64.

7.  *Kirkpatrick v. Jacobson's Lifetime Buildings, Inc.,* Okl., 467 P.2d 489, 490 (1970).

er than "earned surplus" and includes (a) paid-in surplus—amounts contributed for or assigned to shares in excess of the stated capital applicable thereto; (b) revaluation surplus—surplus arising from a revaluation of assets above cost; and (c) donated surplus—contributions other than for shares, whether from shareholders or others.[8] Although "unearned surplus" might be more refined in meaning from an accounting standpoint, the nature of the items indicated to be included is contra to the so-called "surplus" relied upon here by Leikam.

The term "earned surplus" relates to net accumulation of profits. It is a part of surplus that represents the net earnings, gains or profits (after deduction of all losses) that has not been distributed as dividends, or transferred to stated capital or capital surplus, or applied to other purposes permitted by law. It is computed from (1) the date of incorporation, (2) from the latest quasi-reorganization, (3) from the time when it is first segregated from surplus, or (4) from the time of any merger, consolidation or the combination of two corporations.[9] There is difficulty in applying that term to the item argued as surplus, here. As indicated by the accounting witness, that item might never be realized profit due to outstanding bills, or the contract never being closed. This could also occur through no over-all profit on a closed contract. That witness testified the accounting records were being maintained to satisfy the Internal Revenue Regulations and the $32,500 item was not transferred into a surplus account after that date. We hold the $32,500 item was not available as "earned surplus" for the purchase of its own stock by the corporation. Nor, do we believe Leikam seriously argues that position through his emphasis of "any surplus" and in citing *Kirkpatrick, supra,*[10] for authority as not limiting that term to "earned surplus."

Although *Kirkpatrick* holds purchase of stock by corporation cancelling an indebtedness owed it by the shareholder is not violative of 18 O.S.1961, § 1.136, the case does not say such purchase may be made even though there does exist an available surplus of funds. That case recognizes such purchases must be made from surplus funds but not necessarily "earned" surplus.

■ Without the $32,500 item labeled deferred income for income tax purposes, there is no item of sufficient amount that qualifies as "any surplus" to allow the stock purchase. That purchase was not authorized by § 1.136. It is unlawful and ineffective. The trial court was correct in holding it violated the Business Corporation Act. With the ineffective sale, then the debt to the corporation remains and is properly reached by the garnishment proceedings.

■ Under the views of this opinion, the issue need not be determined as to Leikam's personal liability under § 1.146 as a director or former director. His position the evidence is not sufficient to support the trial court's judgment has no merit.

Affirmed.

All of the Justices concur.

---

8. "Law of Corporations," Henn, see discussion under § 319, Accounting Principles, particularly as to Basic Accounting Equation, p. 635 et seq. and n. 6, p. 636.

9. See n. 8, supra.

10. See n. 7, supra.