441 So.2d 1204 (1983)
STATE of Louisiana
v.
Nicholas H. GILL.
No. 82-KA-1946.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 6, 1984.
*1205 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William C. Credo, III, W.C. Douglas Friederichsen, Asst. Dist. Attys., for plaintiff-appellee.
Ronald L. Wilson, New Orleans, for defendant-appellant.
LEMMON, Justice.
In this appeal from a conviction for two counts of attempted simple kidnapping, defendant principally challenges the constitutionality of the simple kidnapping statute and the sufficiency of the evidence.[1]
Facts
Two young boys, ages 11 and 13, were dropped off by their parents at an amusement center known as Skate Country for a session of roller skating. As they entered Skate Country, the boys were apparently given coupons entitling them to a free order of french fries at a nearby McDonald's fast food restaurant.
Eventually, the boys decided to hide their skates near a tree and to walk two blocks to McDonald's to obtain their snack. As they walked along the road, defendant, a 29-year old man, pulled alongside of them in an automobile. He inquired about their destination and about the location of a place called the Game Room. The boys said they were going to McDonald's, and they gave him directions to the Game Room.
When the boys arrived at McDonald's, defendant was there, standing in line. The boys, who had no money, soon discovered that the coupons were valid only if used in conjunction with another purchase. Defendant agreed to purchase two cokes if the boys would show him the location of the Game Room.
Defendant and the two boys walked to defendant's automobile in the parking lot. The boys pointed out the location of the Game Room, but refused to get into defendant's automobile. When defendant "begged" them to get into his car, they became "scared". Defendant then offered his keys, wallet and driver's license to the boys in an effort to entice them into the vehicle. When the boys remained steadfast in their refusal, defendant insisted on repayment of the money expended on the cokes and threatened to take their skates until they repaid him. By that time, the boys were quite apprehensive and fled on foot back toward Skate Country. Defendant followed them on foot.
When the boys arrived at Skate Country, they saw a uniformed police officer and reported to him that defendant was "chasing" them. The boys repeated their version of the events, and the officer and an off-duty detective (who happened to be there with his own children) requested that defendant accompany them into the office. According to the officer's trial testimony, defendant, after being advised of his rights, admitted his efforts to entice the young boys into his vehicle, explaining that he was merely a lonely person who was attempting to "make friends".[2] Defendant further admitted that he intended to take the boys to his home "for a little while", which he later explained to mean a "few days". Under further questioning, defendant admitted that he had previously taken other young boys to his home.
Defendant took the stand at trial and denied telling the officer that he intended to take the boys to his home.[3]
Following a jury trial, defendant was found guilty as charged on both counts of *1206 attempted simple kidnapping. He was sentenced to three years imprisonment at hard labor. That sentence was suspended on the condition that he serve one year in the parish jail and that he obtain psychiatric treatment.
Constitutionality of the Statute
Defendant first challenges the constitutionality of La.R.S. 14:45A(2), which proscribes "the intentional taking, enticing or decoying away, for an unlawful purpose" of a child under the age of 14, without the consent of the parent.[4] (Emphasis supplied) Defendant argues that the phrase "unlawful purpose" fails to give fair notice to a reasonable person of the conduct which is prohibited.
This court stated the applicable legal principle in State v. Dousay, 378 So.2d 414, 416 (La.1979):
"Two fundamental concepts are embodied in the principle that the vagueness of a criminal enactment may render it unconstitutional. The first of these is that individuals must be given adequate notice that certain contemplated conduct is proscribed and punishable by law. The second is that adequate standards must be provided for those charged with determining the guilt or innocence of an accused."
Subsection 45 A(2) makes a crime of any "taking, enticing or decoying away" of a child without parental consent, except when the taker has a lawful purpose for his action. Thus, the pertinent statutory provision, which focuses on the intent or purpose of the taker, excepts from criminal sanctions the taking or enticing of a child for purposes such as removing the child from an area of dynamite blasting, since there is nothing unlawful about taking a child away from a particular place for the purpose of protection from immediate danger.
As used in this statute, the term "unlawful" is certainly not unconstitutionally vague. Whether the statutory term means a purpose violative of a prohibitory law (certainly an acceptable and understandable concept) or one merely disapproved by law, the term "unlawful" puts a reasonable person on notice as to the proscribed conduct.[5] See State v. Bulot, 75 La. 21, 142 So. 787 (1932).
*1207 It is noteworthy that the term is used in the context of a statute which prohibits the inherently questionable conduct of "enticing or decoying" children without their parents' permission. In this context, we have no difficulty in concluding that the challenged statute fairly notifies a person who would be tempted to engage in the questionable conduct of luring away a child without the consent of his parents that he does so at his risk if he has any question concerning the "unlawfulness" of his purpose.[6]
Sufficiency of Evidence
Defendant contends that the evidence did not establish beyond a reasonable doubt that he acted with a specific intent to decoy the boys away for an "unlawful purpose". Defendant did not dispute that the children were under 14 and that their parents had not consented. Similarly, defendant did not deny that he "enticed" them to go with him in his automobile. However, he firmly denied in his testimony at trial any "unlawful purpose", claiming that his motive was simply to befriend the children.
The Legislature, in proscribing "taking, enticing or decoying away" of children, obviously did not intend to include in the proscription such actions undertaken for a lawful purpose (such as, for example, giving children a ride to school on a rainy day), even when done without the consent of parents. However, the state, in order to satisfy its burden of proof by sufficient evidence, need not establish the exact nature of defendant's intent or purpose, but rather need only negate the existence of any lawful purpose.
The evidence in this case, viewed in the light most favorable to the prosecution, established the absence of any lawful purpose for defendant's enticing the boys into his car. Defendant's admission that he planned to lure two young boys to his home and to keep them there (with the implication that this might be either with or without their consent) suffices to eliminate any reasonable doubt as to the "unlawfulness" of defendant's purpose.[7]
Accordingly, the convictions and sentences are affirmed.
DIXON, C.J., concurs.
DENNIS, J., concurs with reasons.
WATSON, J., the proper charge was contributing to delinquency.
NOTES
[1] Defendant's other contention lacks any arguable merit and is treated in an unpublished appendix, which is attached to this opinion and is part of the official record in this case.
[2] The admissibility of defendant's statement is not challenged in this appeal.
[3] Defense counsel also introduced the report of a psychologist, who had evaluated defendant before this incident. The psychologist found that defendant was a profoundly emotionally disturbed person who had an unconscious fear of homosexual orientation indirectly produced by maternal dependency.
[4] La.R.S. 14:45A(2) provides:

"Simple kidnapping is:
"(2) The intentional taking, enticing or decoying away, for an unlawful purpose, of any child not his own and under the age of fourteen years, without the consent of its parent or the person charged with its custody."
[5] As will be discussed in the section dealing with the sufficiency of evidence, we need not here decide whether the Legislature intended to require the state to prove that defendant acted with a purpose to violate another specific criminal statute or whether the state may satisfy its burden by proving that defendant's purpose was one merely disapproved of by the lawin effect equating "unlawful" in this context with "non-lawful", or "without authority of law".

Black's Law Dictionary, 1705 (5th ed. 1979), defines "unlawful" and "unlawful act" as follows:
"Unlawful. That which is contrary to law or unauthorized by law. State v. Chenault, [20 N.M. 181] 147 P. 283, 285. That which is not lawful. State v. Bulot, [175 La. 21] 142 So. 787, 788. The acting contrary to, or in defiance of the law; disobeying or disregarding the law. While necessarily not implying the element of criminality, it is broad enough to include it. Sturgeon v. Crosby Mortuary, [140 Neb. 82] 299 N.W. 378, 383.
"`Unlawful' and `illegal' are frequently used as synonymous terms, but, in the proper sense of the word, `unlawful,' as applied to promises, agreements, considerations, and the like, denotes that they are ineffectual in law because they involve acts which, although not illegal, i.e., positively forbidden, are disapproved of by the law, and are therefore not recognized as the ground of legal rights, either because they are immoral or because they are against public policy. It is on this ground that contracts in restraint of marriage or of trade are generally void. Sweet. And see Hagerman v. Buchanan, [45 N.J.Eq. 292] 17 A. 946; Tatum v. State, 66 Ala. 467; People v. Chicago Gas Trust Co., [130 Ill. 268], 22 N.E. 798.
"Unlawful Act. Act contrary to law, and presupposes that there must be an existing law. State v. Campbell, [217 Iowa 848] 251 N.E. 717.
"In criminal jurisprudence, a violation of some prohibitory law and includes all willful, actionable violations of civil rights, and is not confined to criminal acts. State v. Hailey, [350 Mo. 300] 165 S.W.2d 422, 427."
[6] Regarding a person's proceeding with questionable conduct at his own risk, we restate this court's observations in State v. Lindsey, 310 So.2d 89 (La.1975):

"The `void-for-vagueness' doctrine is not a concept of definite and unchanging content. Balanced against the requirement that a statute must neither forbid nor require the doing of an act'... in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application..." is Mr. Justice Holmes' observation that `the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or short imprisonment ...; he may incur the penalty of death.'
"Drawing the line between statutory language so vague as to be unconstitutional and phraseology that exhibits one of Mr. Justice Holmes' `instances' whereby a citizen may rightfully be required to proceed with his questionable conduct at his own risk can be a difficult task."
[7] Defendant's holding the children at his home against their will would constitute a false imprisonment. See La.R.S. 14:46. His enticing and encouraging them to "remain away" from their home without the consent of their parents would also constitute a violation of La.R.S. 14:92 A(8). Hence, defendant admitted that his "purpose" was unlawful, in that it would fall within the scope of prohibitory statutes proscribing false imprisonment and contributing to the delinquency of minors.